**HAEUSER v. ÆTNA CASUALTY & SURETY. CO. et al.***

**No. 17095.**

Court of Appeal of Louisiana. Orleans.

Jan. 10, 1939.

WESTERFIELD, J., dissenting.

———◆———

*Rehearing granted Feb. 27, 1939; rehearing limited to a consideration of the question of the liability of the Aetna Casualty & Surety Company under its policy.

**494**

James W. Hopkins, of New Orleans, for appellant.

E. Assenheimer, of New Orleans, for appellee Chas. W. Hanna.

St. Clair Adams & Son, of New Orleans, for appellees Chas. T. Kerner and Aetna Casualty & Surety Co.

JANVIER, Judge.

Emile Haeuser, the minor son of Leonard G. Haeuser, received personal injuries while a guest passenger in a Cadillac automobile driven by Walter Hebert, chauffeur of Charles T. Kerner, the owner of the Cadillac, when that car came into collision with a Ford sedan owned and driven by Charles W. Hanna. The accident occurred at the corner of General Taylor and Prytania Streets, New Orleans, at about 12:05 a. m. on September 26, 1937. The Cadillac of Kerner was proceeding in General Taylor Street towards the Mississippi River and the Ford of Hanna was being driven by him up Prytania Street.

The father of the injured minor has filed this suit claiming of the various defendants the sum of $431.56 as the loss sustained by him because of injury to the clothing of his minor son and for hospital and medical bills, etc., which were necessitated by the injuries, and $5,000 for the use and benefit of the said minor for temporary and permanent physical injuries. The defendants against whom solidary judgment was prayed for are: (1) Hebert, the driver of the Kerner Cadillac; (2) Kerner, the owner of the said car; (3) Aetna Casualty & Surety Company, the liability insurance carrier of Kerner; (4) Hanna, the owner and operator of the Ford sedan.

In the District Court there was judgment for plaintiff, but against Hebert alone, in the sum of $431.50 on his own behalf, and in the sum of $2,500 for the use and benefit of his minor son. From this judgment Hebert did not appeal, but the matter is now before us on appeal by plaintiff, who seeks a reversal of the said judgment insofar as it dismisses the suit against the other defendants.

It is contended by plaintiff that Hebert, in driving the Cadillac automobile at the time of the accident, was acting within the course and scope of his employment by Kerner and that, therefore, Kerner, under the doctrine "respondeat superior" is liable for the results of his negligent acts, and that, consequently, the Aetna Casualty & Surety Company, because of the provisions of Act 55 of 1930, is also liable and may be sued directly. It is further contended that, even if Hebert, at the time, was not acting within the course and scope of his employment, he nevertheless was using the car with the permission of Kerner and that, therefore, even if Kerner is not liable as the employer of Hebert, the liability insurance company is responsible because of a policy stipulation known as the "omnibus clause", under which that company agreed to assume the liability of any person operating the said car with the permission of the owner.

The negligence of Hebert is said to have consisted in his entering the intersection of Prytania Street without first reducing his speed or bringing the Cadillac car to a stop, as, it is charged, the traffic ordinances of the City (No. 13,702 C.C.S., as amended) require; in operating the Cadillac at too high a rate of speed, and in not keeping a proper lookout for traffic approaching on the intersecting street.

It is charged that Hanna was at fault in approaching the said corner, which is alleged to be a "blind" one, at a rate of speed greater than is permitted by the said traffic ordinances and in not having his car under control, and also, that he was at fault in not yielding to the driver of the Cadillac car the right-of-way it is claimed he was entitled to because of his approach from the right.

Hanna, denying any negligence on his part, maintains that the accident was caused solely by the fault of Hebert in the particulars above set forth, and he also contends that, if he himself was in any way at fault, there should nevertheless be no recovery because of the contributory negligence of young Haeuser in riding in the automobile driven by Hebert since the latter, to the knowledge of the said Haeus-

er, "had been drinking intoxicating liquor and was not competent to drive said automobile".

Kerner and the liability insurance carrier, both denying any negligence on the part of Hebert, plead in the alternative the contributory negligence of young Haeuser in riding in an automobile driven by Hebert, who, as Haeuser well knew, "had been drinking beer throughout the night and was not competent to drive".

The said defendants also and particularly assert that Hebert was not acting within the course and scope of his employment and the liability insurance carrier makes the further special defense that, if it be shown that the said Hebert was not acting within the scope of his employment and that it is not, therefore, liable as the insurer of Kerner, neither is it liable for the negligence of Hebert, the chauffeur, since the so-called "omnibus clause" in its policy affords protection only to one who, at the time of the accident, may be using the car with the permission of the owner to use it for the actual and particular purpose for which it is being used.

█ We have no doubt as to the fault of Hebert. His speed is shown to have considerably exceeded 15 miles per hour as he approached the corner, which was a "blind" one, in that his view was partly obstructed by the building on the corner to his left. (See Art. V, sec. 3, sub-sec. (b), Ord. No. 13702 C.C.S.) It clearly appears that Hebert took no precautions whatever as he approached the intersection and that he did not look for, or, at least, did not see the Ford of Hanna approaching from his left, and it also clearly appears that the speed of the Cadillac was greatly in excess of what may be termed reasonable under the circumstances. He was clearly at fault and, since this fault, to say the least, had causal connection with the collision, he is liable for the damage caused to his passenger and for the medical expenses, etc., made necessary by his act.

█ We next investigate the facts to determine whether he was at the time acting within the course and scope of his employment by Kerner because only if he was so acting may Kerner be held responsible for his acts.

It appears without contradiction that his employer, several hours earlier, had directed him to take the car from his place of business in Jefferson Parish, above the City of New Orleans, to his residence in Gretna, on the other side of the river, and to put the car into the garage for the night. Instead of doing this, Hebert proceeded to the residence of his niece and her husband and, after visiting there for a while, was persuaded to drive some of his friends and Emile Haeuser, whom he had just met, to the downtown section of the City, where they all had a few drinks, after which, with his guests in the Cadillac, he proceeded to drive them back to the home of his niece. It was while on the way back to his niece's residence that the accident occurred. It thus appears that, at the time of the occurrence, he had entirely departed from the course of his employment and had engaged upon a mission of his own which had not been completed. His employer cannot be held liable for his acts under such circumstances. He had completely severed himself from his duties.

Counsel for plaintiff does not strenuously contend for liability on this ground, but, so far as the insurance carrier is concerned, bases his principal claim on what is known as the "omnibus clause" in the policy, under which the coverage is extended to any "insured" and under which an "insured" is defined as follows:

"IV. Definition of 'Insured'.—The unqualified word 'Insured' wherever used, includes not only the named insured, but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided that the declared and actual use of the automobile is 'pleasure and business', or 'commercial', each as defined herein, and provided, further, that the actual use is with the permission of the named insured. * * *".

Clauses somewhat similar to that quoted above have for sometime been customarily included in liability policies and there has resulted in the courts a disagreement as to whether, within the coverage of such a clause, there should be included as an "insured" an employee who, though permitted to use his employer's car for designated purposes, uses the car in his own concerns, and, while so doing, negligently causes damage. Apparently a substantial majority have held that there is no protection afforded the user unless he is at the time using the car for the particular purpose contemplated when the permission to use was granted, and that the term

"insured" should not be held to include an employee who departs from his course of duty and uses the car for his own purpose. But other courts have taken the opposite view and have declared that there is coverage afforded to the user regardless of the particular use to which the car is being put, if initially there was permission to use the car, even though for some other contemplated purpose. The Supreme Court of Louisiana has adopted the latter view and, in Parks v. Hall, 189 La. 849, 181 So. 191, said [page 194]:

"We therefore conclude that the *permission of the assured* to Hall *to use the car in the first instance,* irrespective of the use to which he put the car while in his possession was *'permission of the assured' within the meaning and contemplation of the 'omnibus clause'* and the insurer is therefore liable to plaintiffs thereunder." (Italics by Supreme Court.)

That case is relied upon by plaintiff. But counsel for the insurer, in the case at bar, points to a difference in the wording of the policy stipulation on which that decision was based and shows that there the stipulation provided that the term "assured" included any person using the car with the permission of the assured, provided "it is being used with the permission of the named Assured", whereas, in the policy with which we are concerned, the stipulation, as we have hereinabove quoted it, after the definition of "insured", contains the proviso "that the *actual* use is with the permission of the named insured * * *". (Italics by Court.)

It seems to us quite obvious that the clause just above quoted, including the word "actual", was inserted for the very purpose of making impossible the result reached in Parks v. Hall, supra, and a careful reading of that decision leads, we think, to the conclusion that, had the policy considered there been the one which is before us now, the court would not have held the user to have been protected by the said clause. There the court, commenting on the fact that there was nothing in the policy which limited the coverage to one using the car for the special purpose contemplated when the permission to use was given, said:

"Under the facts of this case, Hall was operating the car with the permission of the assured and the policy, by its express terms, i. e., the omnibus clause, was made to cover, as an assured, any one who was driving the car with the permission of the owner of the insured car. The provisions of the policy do not limit the liability thereunder to causes arising when the permitted driver was using the car either for the owner's business or under any restricted circumstances. The language is not restricted, but used in its broadest possible sense and under the rules of construction generally applicable in cases of this kind, we must give the language used the same broad construction. The words used in the clause would be practically meaningless and the object there made nugatory if it were necessary to determine in every case whether, at the time and under the circumstances of the accident, the driver was proceeding within the limitations of the permission of the assured to use the car. In order to give the clause 'provided: (a) it is being used with the permission of the named Assured,' the construction placed by the Court of Appeal and contended for by the defendants, we would have to give it a restricted and limited meaning, contrary to the rules of construction of such contracts. We would have to resolve the doubt or uncertainty or ambiguity in favor of the writer of the insurance contract."

In the policy before us the word "actual" was inserted apparently for the specific purpose of limiting the coverage to the situation in which the particular or actual use to which the car is being put is the use contemplated when permission to use was granted. When this change in the policy form was made there must have been a reason therefor.

It is argued on behalf of plaintiff that there is no real distinction between the word "use" and the words "actual use", and possibly this ordinarily is true. But when a form such as that formerly in use is changed after interpretation such as that found in Parks v. Hall, it seems clear that the reason for the change was to avoid the possibility of such a conclusion as had been reached previously.

We are told in the brief filed by counsel for the liability insurance carrier that a member of the bureau which prepared the form of policy involved here, in a book on automobile liability insurance, explained the particular proviso and the reasons therefor as follows:

"One important change in this proviso is that not only must the use of the automobile be with the permission of the

named Insured, but the *actual* use to which the automobile is being put at the time of the injury or damage *must be a use within the scope of the permission of the named insured.* If the conditions set forth in both provisos are met, the insurance is available to both classes described." (Italics counsel's.)

There also appears in a recent text-book by Appleman on automobile liability insurance the following statement and discussion concerning the change in the so-called omnibus clause:

"One of the most important changes in the wording of the policy from the older forms is the substitution of the phrase 'actual use' for the word 'use'. The purpose of this is clear. Some minority cases have held that the use is with the permission if the original bailment has been made with the consent of the insured. Under the newer wording it is almost essential that the use made of the vehicle at the time of the accident must be one actually contemplated by all the parties when the bailment was made. If this clause is given the sound and unambiguous construction which its terms require, it will probably result in a number of the minority jurisdictions altering their results to conform with the majority view. * * *

"It will be noted that the wording of the standard policy limits protection to instances where the automobile is operated by a third person and the 'actual use' is with the consent of the insured. This obviously is designed to abrogate the minority rule adopted by several states and attempts to adopt the majority rule—i. e.,—that the automobile must be used at a time, place, and under circumstances permitted by the original bailment. There is no reason why this result should not be recognized by the courts. A policy of insurance, unless otherwise specified by statute, is merely a contract between the insurance company and the policyholder to protect him in event of accident. Any protection extended over to third persons is usually because of courtesy and convenience. *The terms of the omnibus clause are not a limitation upon protection afforded by the policy. They are an extension over of further and additional liability and cannot be made more sweeping than the words definitely imply. We may expect, therefore, a definite restriction of the minority rule."* (Italics by author.)

The minority rule referred to in the above quotation is the doctrine or rule adopted in Parks v. Hall.

In the case at bar, though Kerner had authorized the use of the car by Hebert, since he had instructed him to take it to his garage at his residence, he had not authorized the "actual" use to which it was being put at the time, and, hence, the policy provision was not complied with, and, therefore, there was not extended to Hebert the coverage which would have been afforded to any user using the car for the actual purpose contemplated when the permission to use was granted. Since Hebert was not, under the circumstances, afforded protection by the omnibus clause, there can be no recovery by plaintiff from the insurer on the theory that Act 55 of 1930 permits to anyone injured a direct action against the insurer of anyone liable.

We next approach the question of whether Hanna, the driver of the Ford, was at fault, because, if he was and if that fault contributed to the result, then he—solidarily with Hebert—would be liable for the damage sustained. He, also, was approaching a "blind" corner in that there was an obstruction to his view which prevented him, when fifty feet from the intersection, from having "a clear and uninterrupted view of such intersection and of the traffic upon all of the streets entering the intersection for a distance of one hundred (100) feet from such intersection." (Art. V, Sec. 3, sub-sec. (b), Ordinance No. 13,702 C.C.S.)

He admitted that, as he approached that corner, he was driving his car at a speed slightly in excess of that permitted under such conditions. But we do not think that this slight technical violation had any real bearing on the accident since the Kerner car is shown to have dashed into the intersection at high speed and immediately in front of the Hanna car. It is true that, as Hanna approached the corner, the Kerner car was approaching from his right and that, therefore, the driver of that car—had the two reached the corner at about the same time and at reasonable speeds—would have been entitled to the right-of-way. (Sec. 10, Art. VI, Ordinance No. 13,702 C.C.S.) But it appears that, when the Hanna car reached the intersection and was just about to enter it, the Kerner car, at a grossly excessive speed, dashed into the crossing directly in front of it and at a time when

Hanna no longer could stop. The physical condition of the front of the Hanna car affords evidence of the fact that it did not crash into the side of the Kerner car, for its bumper and right headlight are not crushed back, as they would have been, but are very obviously pulled to the left, showing that the left side of the Kerner car, as it dashed across, grazed the front of the Hanna car and caused the damage to the latter. That the Cadillac skidded and that it was going at an excessive speed, is in evidence, and it also appears that it completely crossed the intersection and could not be stopped until it reached a point on General Taylor Street adjacent to the third tree from the corner of Prytania Street.

Viewing the evidence as a whole, we can find no fault with the conclusion reached by our brother below.

So far as the quantum is concerned, we find no complaint by plaintiff and no appeal by Hebert.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of plaintiff.

Affirmed.

WESTERFIELD, Judge (dissenting).

The only difference in the policy provision considered here and that considered in Parks v. Hall. 189 La. 849, 181 So. 191, is that in the present case the words "actual use" are employed. whereas in the Hall Case the word "use" appears. With all due respect for the opinion of my colleagues, I can see no real distinction between use and actual use so far as this case is concerned.

Webster's New International Dictionary, 2d Ed., 1938, defines the word "actual" as follows:

"(Adjective). * * * 2. Existing in act or reality; really acted or acting or being; in fact; real;—opposed to potential, possible, ostensible, virtual, speculative, conceivable, ideal, theoretical, hypothetical, or nominal; as, the actual cost of goods; the actual case; actual determination or eviction.

\* \* \* \* \* \* \*

"(Noun) 1. That which exists in fact; a reality. * * *"

In Bouvier's Law Dictionary, Rawle's Third Rev., p. 130, "actual" is defined as "something real, in opposition to constructive, or speculative, 'something existing in act'. State v. Wells, 31 Conn. [210] 213."

So that the difference between "actual use" and "use" is the real as opposed to the theoretical, or constructive enjoyment of a thing.

The omnibus clause in the policy issued by the insurer-defendant covers any person operating the automobile and actually using it with the permission of the insured. It is conceded that Hebert used the automobile with the consent of the insured and it seems to me that he actually used it.

I, therefore, respectfully dissent.