## PARRETTI v. METROPOLITAN LIFE INS. CO.

### No. 17387.

Court of Appeal of Louisiana. Orleans.

June 13, 1940.

Spencer, Phelps, Dunbar & Marks and Louis B. Claverie, all of New Orleans, for appellant.

Adelaide Baudier, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit on a policy of industrial life insurance, issued to Louis D. Parretti, deceased, by the Metropolitan Life Insurance Company brought by Dominick D. Parretti, the insured's father.

Defendant filed an exception of no cause of action and of prescription of ten years, liberandi causa, as established by Article 3544 of the Civil Code.

There was judgment below in favor of plaintiff and defendant has appealed.

The facts in the case, most of which are the subject of a stipulation by counsel, are as follows:

The Metropolitan Life Insurance Company, hereinafter called the company, issued its policy to Louis D. Parretti, in the principal sum of $135, erroneously stated as $140 in plaintiff's petition, on April 1, 1918. The insured, who was fourteen years of age when the policy was issued, died on January 22, 1922. At the time of his death the weekly premiums on the policy were in default since July 18, 1921. The usual proofs of loss were submitted and the sum of $9 was paid by the company to Parretti's mother, Mrs. Alice Parretti, on February 10, 1922, this sum representing the amount of paid up insurance in accordance with a table contained in the policy. In April or May, 1938, Dominick D. Parretti, the father of the insured, heard a neighbor of his discussing the question of extended insurance and, at the suggestion of his neighbor, consulted Thomas E. Brennan, a former employee of the company, and, at that time, the President of the "Policyholder's Mutual Protective Association". Brennan advised Parretti that he had a just claim against the company for the full face value of the policy and suggested that he consult an attorney, which he did, with the result that this suit was filed on March 31, 1939.

It is admitted that the accumulated reserve on the policy at the time of the death of the insured, if used for the purchase of extended insurance, was sufficient to carry the policy for a period beyond the date of the death of Parretti. It is also admitted that the company violated Act 193 of 1906 which requires insurance companies to insert in their policies a clause to the effect that such policies are "issued subject to the provisions of this Act relating to non-forfeiture". Brennan testified, without contradiction, that the company in the year 1909 and for several years thereafter complied with the Act of 1906, but that at the time Parretti's policy was issued the practice of compliance had been discontinued. The testimony of Brennan in this respect was corroborated by the production of a policy of the company which was offered in evidence.

At the time the policy was issued to plaintiff's son a number of other members of plaintiff's family were insured by the company under similar policies, four of which were in default on the same day as the policy sued on—July 18, 1921. In response to a letter of inquiry the company wrote to plaintiff under date of May 16, 1938, the following letter:

"At your request we recently addressed our Home Office regarding the value of policies on members of your family. We have this date received the following information:

"Policy 56785015 canceled with a date of last payment of July 18th, 1921 and was then carried as extended insurance for 2 years and 288 days, expiring May 9, 1924. It is of no value.

"Policy No. 56745350 canceled with a date of last payment of July 18, 1921, was carried as extended insurance for four years and 328 days, expiring June 18, 1926. It is of no value.

"Policy No. 5674349 canceled with a date of last payment of July 18, 1921, was carried as extended insurance for 5 years and 126 days, expiring November 28, 1926. It is of no value.

"Policy No. 56745348 canceled with a date of last payment of July 18, 1921, was carried as extended insurance for 7 years and 325 days, expiring June 15, 1929.

"Policies No. 55164940, No. 55164943, No. 55164941 and No. 55164942 canceled with a date of last payment of November 26th, 1917. They are of no value as premiums were not paid three years."

The sole defense is based upon the plea of prescription.

Article 3544 of the Civil Code reads as follows: "In general, all personal actions, except those before enumerated, are prescribed by ten years."

Since plaintiff's cause of action arose at the time of the death of the insured, January 22, 1922, and suit was not brought until March 31, 1939, more than seventeen years later, prescription, unless interrupted, had obviously run at the time this suit was filed.

Plaintiff invokes the doctrine of contra non valentem agere nulla currit praescriptio, relying mainly upon the case of Cruze v. Life Insurance Company of Virginia, 184 So. 735; 185 So. 492, a case decided by this Court in which the doctrine invoked was held applicable to a similar situation.

Able counsel for the company call our attention to the fact that statutes of repose are greatly favored in law, citing a number of authorities of this and other jurisdictions to that effect, particularly one of this Court in the matter of In re Quaker Realty Company, 1909, 6 Orleans App. 220, where we said: "Sympathetic considerations cannot be allowed to mitigate this strict provision of a statute of repose."

Act 193 of 1906, in Section 1, provides: "That every contract or policy of life or endowment insurance (other than a term policy for twenty years or less) issued on the life of a resident of this State by any corporation or association organized under the legal reserve laws of this State, or of any other State and delivered within this State, shall, after January first, nineteen hundred and seven, contain a stipulation that after three full annual premiums have been paid thereon it shall not lapse or become void or be forfeited for nonpayment of any premium thereafter, or of any note therefor, or of any loan on such policy, or of any interest on such note or loan, and that it is issued subject to the provisions of this Act relating to non-forfeiture."

Section 2 of the Act reads: "That no policy of life or endowment insurance (other than a term policy for twenty years or less) issued by any legal reserve life insurance company on or after January first, nineteen hundred and seven, after being in force three full years shall by its terms lapse or become forfeited by the non-payment of any premium or any note therefor, or of any loan on such policy or of any interest on such note or loan. The reserve on such policy computed according to the standard adopted by said company, together with the value of any dividend additions upon said policy, after deducting any indebtedness to the company and one-fifth of the said entire reserve, shall upon demand with surrender of the policy be applied as a surrender value as agreed upon in the policy, provided that if no other option expressed in the policy be availed of by the owner thereof, the same without any further act on the part of the owner of the policy, shall be applied to continue the insurance in force at its full amount including any outstanding dividend additions less any outstanding indebtedness on the policy, so long as such surrender value will purchase non-participating temporary insurance at net single premium rates by the standard adopted by the company, at the age of the insured at the time of lapse or forfeiture * * *".

It is conceded that the Cruze case held that the maxim contra non valentem agere nulla currit praescriptio had the effect of interrupting prescription of one year as provided by the terms of a similar policy and of two years as established by Act 68 of 1906, in that case because the Life Insurance Company of Virginia had failed to insert in its policy the clause with reference to extended insurance as it was required to do under the terms of Act 193 of 1906. We said in our opinion that the failure to comply with the law amounted to a "technical fraud on its part and it

must be regarded as having had the effect of hindering the creditor in ascertaining knowledge of the existence of the right established in his favor". [185 So. 493.]

Counsel for the defendant insurance company, nevertheless, contend that "in order to enable a creditor to invoke the doctrine of contra non valentem on the basis of a fraudulent concealment by his debtor, it is universally recognized that there must be a concealment through fraud on the part of the debtor and this fraudulent concealment must effectively prevent the creditor from ascertaining knowledge of the existence of his cause of action. Mere fraudulent concealment by the debtor is insufficient. If the creditor knew of his rights or could have known of his rights by the exercise of reasonable diligence, then he is not permitted to invoke the doctrine of contra non valentem, despite any fraudulent concealment that may have been attempted by his debtor".

It is argued that there was no fraudulent concealment here which had the effect of preventing the creditor from ascertaining the existence of Act 193 of 1906 and the privileges and benefits it conferred. In our opinion it will not do for an insurance company to say that its violation of a provision of the laws of this State intended to inform its creditors of the rights conferred upon them by statute by inserting in their contracts of insurance reference to that statute, does not prevent the creditor from ascertaining on his own account, by independent research, the existence of the law. The legislative requirement that the policy should contain a reference to the statute is mandatory. The statute also provides for a choice by the insured or his beneficiary between paid up and extended insurance and further that if the choice is not exercised the policy shall be carried, at its full value, as extended insurance.

It cannot be said here that the failure to comply with the law was due to inadvertence for the company, according to the undisputed oral and documentary evidence at one time complied with it and subsequently abandoned its policy of compliance. Its conduct in this respect is without explanation in the record. Moreover, as has been stated, a number of other members of plaintiff's family were insured under similar policies and when the demand was made for payment of the value of the policies it answered that the reserve had been used to purchase extended insurance which had, in each case, expired.

It is difficult to understand why the defendant, after the death of Louis D. Parretti in 1922, should have insisted upon discharging its obligation under his policy by the payment of the cash surrender value and, at the same time, to have carried, as extended insurance, the other policies issued to other members of Parretti's family. No uniform policy seems to have been in force by the company with respect to its industrial insurance policies in this state, regardless of the statutory requirement.

We can see no difference in principle favorable to defendant between this case and the Cruze case. In fact, we have the distinct impression that the learned counsel for the defendant recognizes this fact and regard his argument as more of a challenge of the correctness of the holding in that case, than as an effort to distinguish it. The view which we entertained at the time the Cruze opinion was written has not changed.

Plaintiff invokes the provisions of Act 17 of 1920, section 1, of which reads as follows: "That all life insurance companies doing business in this State, whether foreign or domestic, are hereby required to pay all death claims within sixty days from date of receipt of due proof of death and should they fail to do so without just cause, then policy will bear interest at the rate of six per cent. (6%) per annum from date of receipt of due proof of death until paid."

In our opinion this is a proper case for the application of the penal provisions of this act. The trial court failed to allow the penalty and since it is claimed by an answer to the appeal the judgment will be amended to that extent, consequently, and for the reasons assigned the judgment appealed from is amended by allowing six per cent interest thereon from February 10, 1922, until paid. In all other respects it is affirmed.

Amended and affirmed.