JANVIER, Judge.
The plaintiff, Mrs. Inez Howard Rhodes, alleges that she sustained physical injuries when an electric street car of New Orleans Public Service, Inc., in which she was a passenger for hire, was brought to a sudden and abrupt stop by its motorman. She alleges that the car was brought to the sudden stop because a motor truck of New Orleans Ice Delivery Corporation and .of Louisiana Ice Service, Inc., which was being operated in the opposite direction, suddenly swerved into the side of the street car. She alleges that the operator of the truck was negligent in operating the truck while under the influence of liquor and in driving in a reckless manner and at an excessive speed, and in that he failed to “keep to the right in meeting a vehicle proceeding in the opposite direction.” She alleges that the motorman was negligent in that he was operating the street car in a reckless manner, at an excessive speed of 35 miles an hour; that he should have seen that the approaching truck was being operated in a careless manner, and in that he failed to avail himself of the last clear chance to avoid a collision.
It is especially charged that Louisiana Ice Service, Inc., and New Orleans Ice Delivery Corp. were at fault in that these corporations, which she alleges were the owners of the truck, permitted it “to be operated, on the streets, with a tire which it knew was defective and which blew out, causing the truck to swerve into the above mentioned street car.”
Plaintiff also makes the following allegation :
“The New Orleans Ice Delivery 'Corporation and the Louisiana Ice Service, Inc. are insured by the New Amsterdam Casualty Company and under the law petitioner has a right to sue the New Amsterdam Casualty Company direct.”
Plaintiff prays for solidary judgment in the sum of $60,856.58 against the two Ice Companies, New Orleans Public Service, Inc., New Amsterdam Casualty Company and Roy Dixon, the operator of the truck.
*551 In a supplemental petition, plaintiff and her husband, Houston Rhodes, repeated and reaverred all of the allegations of the original petition, and in addition alleged that the husband “has no interest in any of the proceeds of this suit of his wife,” and that none “of the proceeds fall into the community.”
New Orleans Ice Delivery Corporation, Louisiana Ice Service, Inc., and New Amsterdam Casualty Company filed a joint answer in which they admitted that the truck in question was owned by New Orleans Ice Delivery Corp., and that New Amsterdam Casualty Company had issued to each of the said Ice Companies a policy of liability insurance. These defendants denied that at the time of the occurrence Roy Dixon, the operator of the truck was acting within the scope of his employment by New Orleans Ice Delivery Corp., and they especially averred that the truck had been taken by Dixon from the premises of its owner after he had completed his work for the day and that it “was being used by him on a personal mission of his own and on no business of the owner of said truck or of his employer, and without its knowledge, consent or permission.”
New Orleans Public Service, Inc., answered admitting that at the time alleged plaintiff was a passenger in its street car, but denying any negligence on the part of the motorman of the car. It averred that, as its street car was being cautiously and prudently operated in a downtown direction on Magazine Street, “a truck which was being operated on Magazine Street, in the uptown direction, suddenly, and without any notice or warning whatsoever, swerved from its path and ran into the left front side of respondent’s street car.” It particularly denied that plaintiff sustained any injury as the result of that occurrence.
The other defendant, Roy Dixon, the operator of the truck, filed no answer.
After a trial in the Civil District Court for the Parish of Orleans there was judgment in favor of plaintiff and against Roy Dixon alone in the sum of $400, and the suit as against all the other defendants was dismissed. Plaintiff has appealed. Dixon has not appealed and has not answered the appeal of plaintiff.
The record shows that at about 9:45 o’clock on the night of August 1, 1946, the plaintiff was á passenger in an electric street car of New Orleans Public Service, Inc., which was proceeding in a downtown direction on Magazine Street and that after it had passed Jena Street and was approaching Napoleon Avenue, it was run into by an ice delivery truck which belonged to New Orleans Ice Delivery Corp., which was being operated by Roy Dixon, an employee of that corporation, and that the truck had been, proceeding in an uptown direction and was on its righthand side of the street in a traffic lane in which it could have passed the street car without striking it, but that just as the two vehicles were about to pass each other, the tire on the left front wheel of the truck “blew out” with the result that the truck swerved to its left into the left front corner of the vestibule of the street car and that it then proceeded to scrape along the left side of the street car and, after passing the rear end of the street car, continued across the remaining riverside portion of the street and ran into the entrance of a garage situated on the river side of Magazine Street.
It is made clear in the record that the street car was being operated at a speed of about 15 miles per hour and that its speed was slow because it was necessary for the car to be stopped before crossing Napoleon Avenue which was only .a little more than 100 feet away. It is also made clear that as soon- as the truck commenced to swerve toward the street car the motorman applied the air brakes and then, in an effort to shield his face, should the front window of the car be broken, which he anticipated, he instinctively threw up his hands in front of his face. The car came to a stop and it is this stop which, according to plaintiff, caused her injuries.
We find it most difficult to understand just what fault counsel for plaintiff relies on in his argument that the motorman was *552 'negligent. He directs attention to the fact that the motorman threw up his hands to shield his face, but at the same time he complains that the car was brought to an abrupt stop. .Surely the motorman did all that he could to avoid an accident. He applied his brakes at once and after they were applied there was nothing further that he could do. There was no reason .why he should not throw up his hands to protect his face. That action on his part had nothing whatever to do with the ultimate result.
Even if the record showed that the car was brought to too abrupt a stop, it could not be said that this was due to fault on the part of the motorman. In the emergency which was neither created nor contributed to by him, he did exactly what any prudent motorman would have done. He brought his car to a stop as soon as possible in order to minimize as much as possible the force of the impact which was imminent.
But the record does not convince us that the stopping of the car was too sudden or abrupt, or that there was any unusual jarring of the passengers. We find no fault whatever for which New Orleans Public Service, Inc., is responsible.
When we come to consider the two Ice Companies we find that Louisiana Ice Service, Inc., did. not own nor operate the truck and that the driver of the truck was not in its employ. The truck was owned and operated by New Orleans Ice Delivery Corp. and Dixon was its employee. However, it is made very certain that, at the time of the occurrence, Dixon was not operating the truck in the course of his employment by that corporation nor in its interests. There can be no doubt on this point and we find it unnecéssary at this time to discuss the facts on which we base this statement. Therefore, since the truck was not being operated by Dixon in the course of his employment nor in the interest of New Orleans Ice Delivery Corp., there can be no liability in that corporation.
In Sun Underwriters Ins. Co. v. Standard Accident Ins. Co. of Detroit, Mich. (Cascio v. Adler), La.App., 47 So.2d 133, 135, in which writs were refused by the Supreme Court, we found a situation in which Mrs. Adler owned a car which was being used by her employee solely in his personal interests and without her knowledge. Although we held Mrs. Adler’s insurer liable because of the omnibus clause, we held that Mrs. Adler was not liable. We said:
“We have already stated that Poleate was using the car on a mission of his own, without the knowledge of Mrs. Adler and in violation of her general instructions, and on this question there is no controversy,. Consequently, there can be no liability in Mrs. Adler. Accordingly, there is no doubt as to the correctness of the judgments insofar as they dismiss the suits as against her.”
The admission of New Amsterdam Casualty Company that it had issued to New Orleans Ice Delivery Corp. a policy of liability insurance makes it necessary that we consider a very interesting question, for while it is clear that the owner of a motor vehicle is not liable for damages caused by negligent operation of his car while it is being operated without his knowledge or consent, there is always the possibility that his insurer may be liable under what is termed the Omnibus Clause which is found in many liability insurance policies.
 As shown in various decisions of this and other courts, notably in Sun Underwriters Ins. Co. v. Standard Accident Ins. Co., supra, and Haeuser v. Aetna Casualty & Surety Co., 185 So. 493, and Parks v. Hall, 189 La. 849, 181 So. 191, where a policy does contain a omnibus clause, it usually provides that the “insured” shall be protected by the policy, and that the word “insured” shall include “ ‘any person while using the automobile, * * * provided the actual use of the automobile is with the permission of the named insured.’ ” That language has been interpreted to mean that where there is such an omnibus claiise, there is'direct liability of *553 the insurer to an insured person if the automobile which caused the injury was at the time of the accident being operated by some one who was using it with the consent of the owner, even though the particular use to which the car was being put at the time of the accident may not have been within the remotest contemplation of the owner when permission to use the car was granted. In other words, it is held in those cases, notably the Adler case and the Haeuser case, that even under such a clause which contains the words “actual use” if even limited permission for a specific purpose is granted for the use of the car and the person uses it for an entirely different purpose, yet the insurer of the owner may be liable for damages resulting from its negligent operation.
In view of this it becomes necessary that we determine whether there is or should be proof that the policy, which it is admitted the New Amsterdam Casualty Company issued to New Orleans Ice Delivery Corp., contained such a clause, and also to determine whether the truck which was being operated by Dixon was being used with the initial consent, permission or authorization of that corporation.
There is nothing in this record nor— so far as we have been able to ascertain— in our statutes which requires that a liability policy must contain such ah ominbus clause. As a matter of fact, it seems evident from what we said in the Adler case that the insurers, by common consent, prepared the clause as it was before the decision in Parks v. Hall, supra, and that they, by common consent, made the change by inserting the word “actual” which is now found in many such policies. If they voluntarily inserted the clause originally and voluntarily made the change in the wording, it seems evident that there was no statute which required such a clause or which required that if there was such a clause it should contain any particular words. As we have said, there is nothing in this record to show whether, the policy in this case contained such a clause. All that we find in the record is the allegation of plaintiff to the effect that the two ice corporations are insured by -the New Amsterdam Casualty Company and the admission by that company that it had issued a liability policy.
We find it unnecessary to determine whether the burden was on plaintiff to prove that the policy in question did contain such a clause or was on the defendant insurance company to prove that it did not contain such a clause. We say this because we think that the record does not show that, at the time of the accident, permission or authority had been granted to Dixon for the use of the truck.
The facts concerning the identity of the truck which was involved in the accident are interesting. The record shows that one of the customers of the New Orleans Ice Delivery Corp. was the Railway Express Agency and that this agency required an enormous quantity of crushed ice, with the result that the Ice Company assigned two of its trucks to that particular agency and that the custom was that one of the trucks would be delivered to the agency full of crushed ice and that this .truck would be left at the place of business of the agency so that it might use the ice from the truck as it found it, necessary, and that the other truck, which had previously brought crushed ice to the agency, would be taken back by the driver who delivered the loaded truck and brought back to the ice plant of the delivery -corporation. And the record shows that on this occasion Dixon, during the afternoon .of August 1, was told to deliver a truck -of crushed ice to the Express Agency and to return the empty truck which he would find at the place of business of the agency.
Dixon admits this, but says that when he took the truck from the Ice Company to the Express Agency, instead of leaving that truck and returning in the other, he unloaded the ice from the first truck into the second and retained possession of the first truck and that he did not return it to the place of business of his employer but left it to go to visit his “girl' friend” and that afterwards, late that night, he was driving it when the accident occurred.
*554 The evidence -rather conclusively shows that this did not occur and that, as a matter of fact, the truck which was involved in the accident was still another truck of the ice corporation which was never used in connection with the business of the Express Agency. The witnesses who testified on behalf of the Ice Corporation, though they could not identify any of the trucks by, number, were quite certain that the truck which was involved was not one of the trucks which was assigned to the business of the Express Agency but was another truck which Dixon had probably taken of his own accord and without any authority or permission after he had returned to the place of business of the ice ■corporation the truck which he had obtained from the Express Agency.
The District Judge apparently believed that the record showed this and, though the record is not clear as it might be on the subject, we find that it would not justify a reversal'of the finding of the District Judge on this question of fact.
Since we have concluded that the truck which was involved in the accident had not been obtained from its owner with any initial consent or authority, or even with knowledge, it necessarily follows that, even under the doctrine announced in Parks v. Hall, supra, and followed in Sun Underwriters Ins. Co. v. Standard Accident Ins. Co., etc., supra, and in Haeuser v. Aetna Casualty & Surety Co., supra, there is no liability in the insurer under the omnibus clause, even if it had been shown that the policy in question contained such a clause.
When we come to consider the contention of plaintiff that the amount awarded is inadequate, we note that the only defendant who has been held liable is Roy Dixon, the driver of the truck, and that he has not appealed nor answered the appeal. We note also that there is grave doubt on the question of whether the disability and injuries from which plaintiffs suffers resulted from that occurrence.
The District Judge himself stated that “the petitioner had a prior injury. Owing to the immensity of the street car, it would take a most violent concussion to jar it.” This would seem to indicate that the District Judge was of the opinion that plaintiff had not been injured in this accident and yet he allowed $400. We ourselves are of the opinion that plaintiff was not injured in this accident, but that there being no appeal nor answer to the appeal by Dixon, we are powerless to reverse the judgment against him. We say that we feel that there was no injury which resulted from this accident because the evidence convinces us that the jolt which resulted from the sudden stopping of the car or from its being struck by the truck was so slight that it amounted to no more than that which ordinarily results when a street car, traveling at moderate speed, is brought to a stop by the application of its air brakes.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.