**PHOENIX ASSURANCE COMPANY OF NEW YORK, Appellant (Garnishee below),**

v.

**Bernetta LATTA and Robert Latta, Appellees (Plaintiffs below),**

and

**Ernest O. McClure and George Acuff Drilling Company (Defendants below).**

No. 3052.

Supreme Court of Wyoming.

July 6, 1962.

Edward E. Murane, of Murane, Bostwick & McDaniel, Casper, for appellant.

Ernest Wilkerson and Robert J. Murphy, Casper, for appellees.

Before PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Bernetta Latta was injured in a one-car turnover accident between Lander and

Hudson, Wyoming, while riding as a guest of the defendant, Ernest O. McClure. The automobile was owned by the George Acuff Drilling Company, and McClure was its drilling superintendent. Alleging gross negligence and willful and wanton misconduct on the part of McClure, the operator, Mrs. Latta and her husband, Robert Latta, sued for damages resulting from Mrs. Latta's injuries. The case was tried to a jury, and judgment was obtained against Ernest O. McClure in the amount of $59,194.32. That judgment was previously affirmed by this court in McClure v. Latta, Wyo., 348 P.2d 1057.

The insurance carrier on the automobile involved in the accident was Phoenix Assurance Company of New York. It handled and controlled the defense in behalf of McClure and also the previous appeal in this court. Following affirmance of the judgment, however, it did not make payment. Upon being garnisheed, it filed an answer to the garnishment notice denying that it was indebted to McClure and denying that its policy of insurance issued in favor of George Acuff Drilling Company protected McClure.

The trial court without a jury tried the issue as to whether or not the garnishee is liable for payment of plaintiff's judgment and rendered judgment to the effect that it is. That decision is now before us on appeal, and we have for determination the question as to whether the policy of insurance which was issued to George Acuff Drilling Company on the vehicle in question protected Ernest O. McClure.

It is agreed that the named insured in the Phoenix Assurance Company policy is George Acuff Drilling Company and that the definition of "insured" is contained in section III of the insuring agreement as follows:

"The unqualified word 'insured' includes the named insured and also includes * * * any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission * * *."

The issue resolves itself to this: Was the actual use of the automobile by McClure with the permission of George Acuff Drilling Company? The insurance company claims that there was a total absence of express permission and that we need concern ourselves only with the question as to whether McClure had implied permission to use the car at the time of the accident. In effect section III, the omnibus clause of the policy, provides that coverage is extended to any person (such as McClure) while using the automobile, if the actual use is with the permission of the named insured (George Acuff Drilling Company).

At the time of the accident the drilling company was operating three or four oil-well drilling rigs in Wyoming. McClure, as drilling superintendent in charge of all the rigs, was furnished a company automobile. It was in his exclusive control and possession continuously or 24 hours a day. His home was at Bridger, Montana. He had no other means of transportation in Wyoming, and the evidence indicates that the company was well aware of that situation. The company also furnished each toolpusher, one at each rig, with a company car on the same basis. McClure was generally in charge of these cars according to his testimony.

George Acuff, president of the George Acuff Drilling Company, testified that it was a policy to turn these cars over to the employees with instructions that they were for company business only and that such was done with McClure. This testimony, however, was in direct conflict with the testimony of McClure who testified that there were no instructions of this nature; that there were no company rules in that regard; that Mr. Acuff had never forbidden him to use the car for personal purposes; and that one of the toolpushers had used a company car to go from Wyoming to his home at Grand Junction, Colorado, the trip resulting in an accident, with no complaint

or disciplinary action on the part of the company. Regarding that trip, Acuff himself testified that use of the car was all right since the man was going to his home. He then continued in his testimony by admitting that he never questioned any of the employees about use of company cars for personal business saying of the question, "It never did come up."

There was substantial evidence to the effect that McClure habitually used his company automobile for all transportation needs whether for company business or personal errands. This included taking friends home, picnic and outing trips with friends, a trip to his home in Montana, fishing and hunting trips, going for groceries, and going to hotels and to dinners (including previous trips from Lander to Hudson with friends for dinner, similar to the trip being made at the time of accident).

Although denied by George Acuff, both McClure and Mrs. Latta testified that on one outing trip to Alcova Lake, when Mr. and Mrs. Latta and other guests were riding as passengers in the company car, they met Acuff on the road leading into the lake from the highway and that McClure waved to Acuff, and Acuff waved back. McClure also testified that he told Acuff at one time about going on a fishing trip and that on another occasion Acuff told him to go to his home in Montana for Christmas. Except for these instances, there was no affirmative proof that Acuff had actual knowledge of personal trips being made in McClure's company automobile, but it is clear that he did know McClure had no other mode of transportation for such trips.

In the case before us the evidence relied on by both sides reveals that on the afternoon of December 31, 1953 George Acuff instructed McClure to pick up some heads or drilling equipment in Casper and take them to the well being drilled at Happy Springs, which is south of Jeffrey City and between Three Forks and Lander, Wyoming. Instead of taking the equipment all the way to the Happy Springs rig, McClure called the rig and told the toolpusher to meet him on the highway and that he would transfer the equipment to the toolpusher. They actually met at Alcova on the highway between Casper and Three Forks. The equipment was delivered to the toolpusher and he took it back to the rig at Happy Springs.

On this trip McClure had Mrs. Latta with him. He did not continue on to the rig, but he and Mrs. Latta went on to Lander passing the Happy Springs turnoff in the vicinity of Jeffrey City. The distance on to Lander from Alcova is approximately 130 miles. Apparently McClure planned no further company duties after delivering the equipment to his toolpusher, although he was always subject to call at any time whether night or day. Also, the evidence discloses that he and Mrs. Latta had previously planned to go to Lander at this particular time, the day before New Year's. He therefore described the rest of the trip and their dinner trip in the evening, when the accident happened, as not a part of company business but rather for personal purposes.

This does not mean, however, that permission to use the company automobile ended at Alcova. To say so would be absurd. The car as well as McClure necessarily had to get from Alcova to the place from which the next company business would be transacted. If there was permission to use the car for any purpose, either express or implied, it must have included such a purpose as we have just mentioned. As far as the court is concerned, based upon the evidence presented, it can only assume that the place where McClure and his company car had to be for further company business was at Lander.

The undisputed testimony shows that McClure frequently went to Lander in connection with his duties; it was described as closer than Casper and the crews off the rig at Happy Springs lived there; it was convenient at times for the company to have him there; it was "sort of a check point"; and according to the only evidence on the subject, if Mr. Acuff wanted to contact

McClure and thought him in the Lander area, he would always call for him at the Noble Hotel. Apparently, from the last instructions Acuff had given McClure, that would apply on this occasion. Moreover, the toolpusher at Happy Springs had been informed that McClure would be at Lander, and McClure's plans for the next day were to go to the rig at Happy Springs to "see how the rig was operating, to check it."

Our attention is directed to rules pertaining to deviations from the purpose and use for which permission is granted, in determining whether there is coverage in the omnibus clause of an insurance policy. These rules are sometimes termed: (1) The strict or conversion rule where any deviation will defeat liability under the coverage of an omnibus clause; (2) the liberal rule where permission for any purpose will be considered to extend to any and all uses; and (3) the moderate, or "minor deviation" rule, where coverage is recognized when the deviation is minor only but not when it is a major deviation. As we understand the position of the insurance company in this case, it is that we should adopt the moderate doctrine and declare McClure's use of his automobile a major deviation from the use for which permission had been granted.

■ Without attempting to catalogue our decision under any one of the foregoing rules, we will content ourselves by saying that under the omnibus clause here in question we need to determine only whether or not there was substantial evidence to support the trial court's finding that McClure had permission to use the insured automobile at the time of the accident. Whether an employee had implied permission to use a company vehicle for the purpose for which it was used, within the meaning of an omnibus clause of a liability policy, is a question of fact. Talbot v. Allstate Insurance Company, La.App., 76 So.2d 76, 80–81; Maryland Casualty Co. v. Williams, 5 Cir., 184 F.2d 983, 984–985; State Farm Mutual Automobile Insurance Co. v. Cook, 186 Va. 658, 43 S.E.2d 863, 867, 5 A.L.R.2d 594;

Liberty Mut. Ins. Co. v. Tiller, 189 Va. 544, 53 S.E.2d 814, 816.

■ In the case before us, we find the district court's conclusion, that McClure had implied permission to use his company automobile at the time of the accident, warranted by all of the evidence. We have already reviewed some of the evidence which supports the decision insofar as McClure's travel from Alcova to Lander is concerned. Regarding the trip from Lander to Hudson, which would have been a distance of ten miles if the trip had been completed, the testimony showed that McClure and Mrs. Latta had stopped and obtained rooms at the Noble Hotel in Lander, and at the time of the accident they were on the way to Hudson for a New Year's Eve dinner. Counsel for the insurer agrees in his brief that permission to use the automobile for business purposes would by implication "include driving to and from a hotel and to and from a restaurant." Apparently no question as to permission for use of the car would have been raised if it were used to go ten blocks. If there be then implied permission for use of the car to go ten blocks for dinner, we cannot say as a matter of law that there would be no implied permission to go ten miles. That calls for a determination which will vary with different individuals, different circumstances and different companies. It involves again a question of fact which must be left to the trier of fact.

The George Acuff Drilling Company, as the evidence reveals, was the kind of an oil-well drilling company that maintained recreational facilities on Alcova Lake, some 35 miles from Casper, for the benefit of its employees. McClure, as previously pointed out, had used his company-owned automobile to go from Lander to Hudson for dinner, and the evidence shows affirmatively that Mr. Acuff had never objected to the kind of uses in general which his drilling superintendent and toolpushers were making of their company cars.

While admitting, however, that permission to use the automobile for business

purposes would by implication include driving to and from a hotel or restaurant, counsel for the garnisheed insurer argues that this does not imply permission to carry unauthorized passengers. He stresses repeatedly in his brief and argument that McClure carried with him a woman guest and even that he had whisky in the car, contending that the permission granted did not carry with it or imply permission to use the vehicle for social purposes, or as he termed it "a frolic of his own."

■ What we are concerned with is whether McClure had permission, either express or implied, to use the car to go from Alcova to Lander and then to Hudson—not whether he had permission to carry a guest or whisky with him. An employee permitted to use a car, but taking a guest in violation of instructions, is nevertheless using the car with permission, and is not prevented by such violation from being an insured. Galletly v. Eagle Indemnity Co., D.C.Pa., 65 F.Supp. 968; Hartford Accident & Indemnity Co. v. Collins, 5 Cir., 96 F.2d 83, certiorari denied, 305 U.S. 627, 59 S.Ct. 89, 83 L.Ed. 401; 45 C.J.S. Insurance § 829, p. 900.

His use of the car is in fact its "actual use," and this phrase, in an omnibus clause, has been held not to be confined to the use contemplated within the scope of the permission granted. Rhodes v. New Orleans Public Service, La.App., 75 So.2d 549, 552–553; Traders & General Ins. Co. v. Powell, 8 Cir., 177 F.2d 660, 666; Brower, to Use of Brower v. Employers' Liability Assur. Co., Limited, of London, England, 318 Pa. 440, 177 A. 826, 828; Peterson v. Maloney, 181 Minn. 437, 232 N.W. 790, 791–792; 45 C.J.S. Insurance § 829, at 902, supra.

· Some of the authorities hold that initial permission of an owner for the use of an automobile by another is all that is required to bring use of the vehicle within an omnibus clause of a policy. See Talbot v. Allstate Insurance Company, La.App., 76 So.2d 76, 82; Dominguez v. American Casualty Co., 217 La. 487, 46 So.2d 744, 748. We do not consider it necessary for us to adopt this liberal view, and we do not pretend to say that initial permission in all cases will be sufficient to bring the use of an automobile within an omnibus clause of a liability policy.

In the instant case, we have not hesitated to say that this determination was for the trial judge and that we consider the evidence sufficient to support his finding. In that connection there are two considerations to which we have not yet alluded. They have contributed materially to our decision as far as this particular case is concerned. These considerations have to do with a continuous permission situation and the insurer's admission.

### Continuous Permission Situation

In Annotation, 5 A.L.R.2d 600, 617, it is pointed out that, where an employee has a broad and general discretion as to the use of a motor vehicle, a different situation exists from the one where the car is in the control of the employer. The author of the annotation states that such discretion may be assumed where the employee holds a responsible position which requires continuous use of a motor vehicle, and which does not subordinate him to specific instructions or supervision in regard to its use. That seems to be the situation in the case at bar.

■ We believe the foregoing A.L.R. Annotation, at page 617, correctly summarizes the trend of authorities on this subject in saying:

"An employee of this type will, as a rule, be held to have continuous permission to use the car and hence there is a distinct tendency to consider him as coming within the protection of the omnibus clause of a liability insurance policy, irrespective of the particular use of the automobile at the time of the accident."

### Insurer's Admission

In addition to its finding that there was implied permission for the use of the motor vehicle here involved, the district court also found that the insurance company was

estopped to deny its liability because of·its defense of the original suit against the defendant Ernest O. McClure. The appellant, Phoenix Assurance Company, complains (1) that estoppel was not pleaded; (2) that it was not raised at the pretrial conference; and (3) that estoppel in any case cannot be claimed by the Lattas who were not parties or privies to the contract of insurance.

Attorneys for the Lattas on the other hand point out that this is a garnishment proceeding with no pleadings being filed, except for an answer of the garnishee. They also claim that the estoppel is in favor of McClure and not the Lattas, but in any event that Lattas are third-party beneficiaries of the liability policy. No explanation or justification was made, however, for their failure to raise the issue of estoppel at pretrial conference. Doubtless it should have been raised at that time, if it was to be relied upon. See 1A Barron and Holtzoff, Federal Practice and Procedure, § 473, p. 853 (1960).

We do not consider it necessary for us to decide the case on the basis of estoppel, and we will not therefore attempt to pass upon the relative merits of the conflicting views which have been raised concerning the doctrine of estoppel. This does not prevent us, however, from ascribing proper weight to all the evidence bearing upon the issue as stated in the pretrial order. That issue was: Did the insurance agreement between Phoenix Assurance Company of New York and George Acuff Drilling Company include the defendant Ernest McClure within the definition of "insured"?

In 31 C.J.S. Estoppel § 1, p. 192, it is said that estoppels differ from evidence in that estoppels are received as "conclusive" and preclude all inquiry into the merits, while evidence is merely the medium of establishing facts which do exist or have existed. Therefore, without invoking the doctrine of estoppel, we must nevertheless review all of the evidence and facts which were before the trial court pertaining to the question as to whether McClure was an insured. Certainly the actions and state-

ments of the garnishee and of George Acuff Drilling Company may be helpful in determining that pertinent issue.

During the pendency of the damage action, the insurance company wrote to McClure advising him that the company had selected the law office of Murane & Bostwick to defend him and George Acuff Drilling Company in the litigation. McClure was at liberty, according to the letter, to employ a personal attorney although this was not required. The letter then stated that it was to be understood, however, that the firm of Murane & Bostwick "will be in control of and responsible for the defense of the litigation." This notification was signed in the name of Phoenix Assurance Company of New York by Edward E. Murane, Wyoming counsel. The writer of the letter, Mr. Murane, was also attorney for the George Acuff Drilling Company. His firm did in fact handle and control the defense for Ernest O. McClure and for the George Acuff Drilling Company. It also handled the previous appeal in this court. McClure testified that he paid none of the attorney fees or costs for either the defense or appeal.

At the hearing on the garnishment proceedings, McClure testified that he had been told by attorney Murane that Murane would defend him as long as he cooperated. He also said that he was warned to stay away from the Lattas, or the insurance company would call it collusion. There was no evidence that the company required any writing or took any action to reserve its right to deny liability under the terms of the policy.

■ Thus it appears that the insurance company and the drilling company as well, both of which were represented by Mr. Murane, admitted by their actions and statements that McClure was insured. The admission may not be conclusive, but it was additional evidence which the trial court was entitled to consider.

In dealing with a similar problem, the appellate court in Horn v. Commonwealth

Casualty Company, 105 N.J.L. 616, 147 A. 483, said:

"It is now too late for it [the insurance company] to say that there is no proof of the permission by the named assured * * *. The defendant company by its very act has solemnly and in a court of law admitted the point. Its conduct is proof of the fact and the trial court could not have found otherwise."

The judgment against the garnishee is amply supported by evidence and must be affirmed.

Affirmed.

BLUME, C. J., not participating.