The TRAVELERS INSURANCE COMPANY, Petitioner,

v.

Sandra Wyleen WEATHERFORD and Willie Weatherford, Respondents.

Supreme Court of Tennessee.

March 3, 1975.

Michael J. Philbin, S. McPheeters Glasgow, Jr., Glasgow, Adams & Taylor, Nashville, for petitioner.

C. Allen High, David Vincent, Nashville, for respondents.

OPINION

HENRY, Justice.

This suit in chancery involves a construction of a standard omnibus clause in a policy of automobile liability insurance.

Respondents instituted suit seeking to compel petitioner to pay certain judgments rendered in their favor in the Circhit Court of Davidson County. These judgments were based on personal injuries sustained by Sandra Weatherford while a passenger in an automobile insured by Travelers Insurance Company and being driven by an individual who was authorized to do so by the son of the insured, an alleged permissive user.

The Chancellor dismissed the suit, and the Court of Appeals, in a divided opinion, reversed the Chancellor. We granted certiorari and have heard argument.

I.

Mrs. Jennie B. Mayes owned a Thunderbird automobile, upon which Travelers had the liability coverage. Her son, William Harris, was a member of the United States Army, and, on the date of the accident, was enjoying a self-granted vacation from his no doubt burdensome military duties, or phrasing it another way, he had "gone over the hill" and was on a frolic commonly described as being AWOL. He was staying with his mother, Mrs. Mayes.

She had just purchased a Thunderbird, and William had never driven it. On the afternoon of May 16, 1970, he asked for and received permission to use it that night for the purpose of taking his girlfriend to a movie. Subsequently, his mother went to the grocery store. Upon her return she discovered that he was drinking. She withdrew the permission to use the car, took both sets of keys, hid them in her bedroom and retired for the evening.

Later William Harris went to his mother's bedroom and, without her knowledge,

took one set of the keys. He and three friends proceeded to a party on Dickerson Road in the vicinity of Nashville. They stayed several hours, leaving sometime after midnight. Harris had been drinking. He asked a companion, George Russell, to drive the car. Russell had not been drinking. Enroute home the accident occurred.

It should be noted that Russell had never driven the car before, and his operation of it was solely pursuant to the authorization of Harris.

## II.

The omnibus clause of the policy issued by Travelers reads as follows:

PERSONS INSURED

Each of the following is an insured under Part 1:

(a) with respect to the owned automobile,

(1) the namel insured and any resident of the same household,

(2) any other person using such automobile with the *permission of the named insured,* providing his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and (emphasis added)

(3) any other person or organization but only with respect to his or its liability because of acts or omission of an insured under (a)(1) or (2) above.

■ It is evident that for Travelers to be answerable, there must be a finding that George Russell was driving the automobile with the *permission of the named insured.* That permission may, of course, be express or implied.

The record establishes conclusively that the named insured gave no such permission. Russell's permission was derivative only, and must necessarily depend upon the status of William Harris.

In short and simple language, Harris was in possession of the automobile in violation of the law.

In pertinent part, the criminal statute generally known as the "joyriding act", Sec. 59–504 T.C.A., reads as follows:

"It shall be a felony for any person to take the automobile . . . belonging to another, without such owner's consent, merely intending to use the same without such owner's consent temporarily and thereafter . . . return the same to the owner."

Viewed from any angle this vacationing soldier took his mother's automobile, without her consent, merely intending to use the same temporarily and thereafter return it to her. It is no answer and of no relevance to say that a conviction would have been difficult or probably impossible. Perhaps so. His guilt is established by this record.

It would be preposterous to say that a resident of the same household, or a child or other relative of an insured or a total stranger could feloniously take an automobile, grant permission to another to operate it and then hold the insurance company responsible for any damages that might ensue.

■ The omnibus clause of an automobile liability policy, as the policy itself, is simply a contract, and it is to be governed by ordinary rules of interpretation of contracts. Moore v. Liberty Mutual Ins. Co., 193 Tenn. 519, 246 S.W.2d 960 (1952).

■ Moreover, an insurer has a right to assume that the risk undertaken shall not be enlarged. Am. Auto Ins. Co. v. Jones, 163 Tenn. 605, 45 S.W.2d 52 (1932).

## III.

■ The Chancellor dismissed this case upon the authority of Shultz v. Tennessee

Farmers Mutual Insurance Co., 218 Tenn. 465, 404 S.W.2d 480 (1966). In the view we take of the case *Shultz* is inapposite. The insured had given her son general permission to use the automobile. In fact he had taken it to Knoxville where he was a student at the University of Tennessee. The secondary permittee was a fraternity brother who was using the car with the son's permission. The court applied the general rule that in the absence of some facts showing that express or implied permission was given by the named insured to the second permittee, he is not protected by the omnibus clause. With this conclusion we are in full accord.

But the present case does not fall within the general rule.

The Court of Appeals for the Western Section, sitting in Nashville, pitched its opinion on Teague v. Tate, 213 Tenn. 267, 375 S.W.2d 840 (1964). With utmost deference to that court, in our view, *Teague* does not control this case.

Again, the insured's son had express permission to use the automobile. This seventeen year old son, along with another boy, went out for the evening. Their respective families were good friends of long standing. The two boys were schoolmates and fraternity brothers. They apparently used their respective family cars and each of them drove each car without regard to ownership. Under all the circumstances this Court concluded that this case justified a departure from the general rule, and held that the second permittee was using the automobile with the implied consent of the insured, and was, therefore, an additional insured.

In *Teague* the Court said:

We do not think this decision does violence to the cases cited by Complainant, nor do we intend to lay down the rule that will license the first permittee to select a second permittee who will, in all cases, become an additional insured.

*Each case should be considered on the facts presented.* (Emphasis supplied)

We see no conflict between *Shultz* and *Teague.*

The Court of Appeals observes in its opinion, with respect to William Harris:

Even though William Harris was absent from the army without leave and even though he had taken the Thunderbird in violation of the express command of his mother, nevertheless under the terms of the policy *he was an insured driver* . . .

Assuming arguendo that Harris was insured under the policy, there is a vast difference between Travelers' liability for injuries caused by his negligence and those caused by a person designated by him to operate a vehicle wrongfully in his possession.

The opinion of the Court of Appeals is reversed and the Chancellor is affirmed.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concurring.