Helen **CURTIS**, By and Through her father and next friend, L. E. Curtis, Plaintiff-Appellee,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Defendant-Appellant.**

No. 76–1964.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 24, 1978.

Decided Jan. 17, 1979.

Alfred M. Pence, Laramie, Wyo. (Pence, Millett & MacMillan, Laramie, Wyo., on the brief), for defendant-appellant.

Paul B. Godfrey, Cheyenne, Wyo. (Godfrey & Sundahl, Cheyenne, Wyo., on the brief), for plaintiff-appellee.

Before HOLLOWAY, DOYLE and McKAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendant State Farm Mutual Automobile Insurance Company appeals from a declaratory judgment, entered on a jury verdict, declaring that a liability insurance policy issued by State Farm to Robert E. Ahrens and JoAnn Ahrens extended coverage to one Joseph Wallace, the driver of the Ahrens vehicle at the time of the accident involved herein. Jurisdiction is founded upon diversity. The primary question before us is whether Wallace comes within the definition of "insured" contained in the policy's omnibus clause, as "any . . . *person* while using the *owned motor vehicle,* PROVIDED THE OPERATION AND THE ACTUAL USE OF SUCH VEHICLE ARE WITH THE PERMISSION OF THE NAMED INSURED . . . AND ARE WITHIN THE SCOPE OF SUCH PERMISSION . . . ." [1]

The Ahrens family had three cars—an Oldsmobile, a Volkswagen owned by Mr.

---

1. The omnibus clause constitutes only one part of the five-part definition of "insured" contained in the policy. The definition as a whole states that the unqualified word "insured" includes:

    (1) the named insured, and

    (2) if the named insured is a *person* or *persons,* also includes his or their spouse(s), if a *resident* of the same household, and

    (3) if *residents* of the same household, the relatives of the first *person* named in the declarations, or of his spouse, and

    (4) any other *person* while using the *owned motor vehicle,* PROVIDED THE OPERATION AND THE ACTUAL USE OF SUCH VEHI-CLE ARE WITH THE PERMISSION OF THE NAMED INSURED OR SUCH SPOUSE AND ARE WITHIN THE SCOPE OF SUCH PERMISSION, and

    (5) under coverages A and B any other *person* or organization, but only with respect to his or its liability for the use of such *owned motor vehicle* by an *insured* as defined in the four subsections above.

(Plaintiff's Ex. No. 1). It is evident that Wallace can fit—if at all—only within the omnibus clause (4), since he is unrelated to the named insureds, Robert E. Ahrens and JoAnn Ahrens. (II R. 166).

and Mrs. Ahrens, and a pickup. The older Ahrens girls, Beth and Shawnna, mainly used the Oldsmobile and Volkswagen, and Mr. Ahrens used the pickup to drive to work.

The accident in question occurred in the early morning of July 5, 1973, outside of Cheyenne, Wyoming. During the previous afternoon, Deborah Ahrens, the 14-year-old daughter of Robert and JoAnn Ahrens, had made arrangements with her friend Helen Curtis and with Brian Tottenhoff and Joseph Wallace to meet at the local ballpark between 1:00 and 2:00 a. m. to shoot off some fireworks. (II R. 40). Helen was spending the night of July 4 with Deborah at her home. Sometime between 1:30 and 2:00 a. m., Deborah and Helen left the Ahrens home—after Deborah's parents had gone to bed—and proceeded to drive the family Volkswagen to the chosen meeting place.

Deborah was not licensed to drive. She had taken the car keys from their customary location on top of the television set without her parents' knowledge. (Id. 33, 45–46, 141). On their way out of the Ahrens' neighborhood, the girls encountered Deborah's older sister, Beth, driving home in the family Oldsmobile. The two sisters stopped and talked for five or ten minutes, but Deborah's use of the Volkswagen was never discussed. (Id. 47). Before she left home, Deborah had also told Shawnna what they were going to do that night; Shawnna knew the girls were going out and made no comment either to forbid or consent to their going. However, Deborah did not tell Beth or Shawnna that she and Helen were going to pick up the boys. (Id. 48–49, 52–53, 54).

Deborah and Helen picked up the boys and went to shoot off the fireworks. The four then started home around 3:30 a. m. Deborah had been driving all along, but at this point Joe Wallace asked if he could drive, and she agreed. (Id. 49). Wallace, like Deborah, was unlicensed. According to Deborah, the accident occurred about five minutes after Wallace took the wheel: "He was going too fast, and he went airbound with the car, and it went over on to the embankment." (Id. 51).

Helen Curtis suffered extensive injuries in the accident, and her father incurred about $15,000 in medical expenses for her treatment. When State Farm disclaimed coverage as to Wallace, Helen's father brought this suit on her behalf for a determination that the defendant State Farm was obligated to defend and indemnify Wallace under the company's policy issued to Mr. and Mrs. Ahrens. As noted, a verdict and declaratory judgment adverse to the company resulted. This appeal followed.

## I

■ The company's primary contention on appeal is that the evidence is clear that Wallace did not have permission to drive the vehicle under the terms of the omnibus clause of the policy, so that coverage did not extend to him. The company says that the district court therefore erred in its denial of a motion for a directed verdict made at the conclusion of plaintiff's case and again at the end of defendant's case, as well as in its denial of a motion for judgment n. o. v.

Wallace was not covered by the policy unless his operation and actual use of the Volkswagen were with the permission of a named insured.[2] The district court instructed the jury that Robert Ahrens and his wife JoAnn were the named insureds under the policy and that neither named insured gave Wallace actual permission to drive the car. (II R. 166). Thus, the controlling question is whether Wallace had implied permission for use of the car so as to bring him within the coverage of the policy.

In *United Services Automobile Association v. Preferred Accident Insurance Co.*, 190 F.2d 404, 406 (10th Cir.), we stated that:

> The necessary permission may be in the form of implied affirmative consent. It may result by implication from the rela-

2. See n. 1, *supra.*

tionship of the parties and their course of conduct in which they mutually acquiesced. And it may arise from a course of conduct pursued with knowledge of the facts for such time and in such manner as to signify clearly and convincingly an understanding consent which amounts in law to a grant of the privilege involved.

The question of implied permission is thus one of fact. *Phoenix Assurance Co. v. Latta,* 373 P.2d 146, 149 (Wyo.). Plaintiff points to much in the record which, it is said, supports the jury's implicit finding of implied permission. In view of such evidence, plaintiff argues that it would have been improper for the trial court to direct a verdict or grant judgment n. o. v. for defendant, because the evidence did not point "all one way" in favor of the moving party. *Bertot v. School District No. 1,* 522 F.2d 1171, 1178 (10th Cir.).

The foundation for a finding of implied permission, plaintiff argues, is the fact that JoAnn Ahrens, Deborah's mother and one of the named insureds, has been blind due to the effects of diabetes since before 1973. Because of this tragic fact, Mrs. Ahrens has had to rely on her three daughters to "take care of everything" around the house. (II R. 14). In July 1973, the two older daughters, Beth (then age 17) and Shawnna (age 16), were licensed drivers and had free use of the family cars, both for carrying out family-related responsibilities such as grocery shopping and for going to and from their part-time jobs. (Id. 16, 26). As noted, the family custom was to keep the car keys on top of the television set; anyone who had used the car would lay the keys down on the set and anyone who wanted to use the car would take the keys off the set. (Id. 19).

Around that time Beth also often took one of the cars out of town on recreational trips to Steamboat Springs and similar places, staying two or three days. Mrs. Ahrens knew that on such trips friends of Beth's went with her and drove the car. There was testimony that Beth's friends McCue and Fleming would sometimes drive the car on such trips and that, while neither JoAnn nor Robert Ahrens gave express permission to them to drive, both parents knew about such driving and neither objected to it. (Id. 20, 29, 143, 145). Also, Shawnna was allowed to take the family cars around town frequently and drove one of the cars to work sometimes. (Id. 18).

Thus, Beth and Shawnna were allowed to drive the cars "as they needed or liked" (id. 26)—except when their father was using them. They bought gas "when they had money and they were out and they needed it"—though customarily their father would maintain the automobiles in working condition. (Id. 35–36). And with Beth at least, there was precedent for allowing other persons to drive the family automobiles without express permission from either parent.

With respect to Deborah, there was testimony that Mr. Ahrens had signed a statement that he had never given Deborah any restrictions as to her use of the car and that there had been no express prohibition to its use. The statement also said, however, that "Debbie was not supposed to drive this vehicle." (Id. 80–82). Mr. Ahrens testified that he thought his wife had been asked during the taking of earlier statements whether the parents had ever specifically told Deborah she could not take the car, that he had said they never specified she could not take it, but that it was "understood on down the line, that I think it probably started with Beth and then Shawnna and then Debbie." (Id. 146). Both Mr. and Mrs. Ahrens testified that they had not given Deborah permission to use the car on the night of the accident and did not know that she had taken the car until they were notified about the accident. (Id. 26–27, 34, 140, 142).

Deborah testified that one time she had driven a family car with her father to a friends' house. She also said that once about a month before the accident she had driven the car without her father. (Id. 38–39). However, her parents both testified they had not known that Deborah had taken the Volkswagen out on any occasion before the accident. (Id. 23, 140).

Plaintiff argues that because of the unusual circumstances relating to the blindness of Mrs. Ahrens, the mother and father had permitted the two older daughters to operate the family vehicles as if they had actually been owners, and that when the older daughters were aware of Deborah's going for the ride in the Volkswagen on the night of July 4, they had unqualified permission to allow Deborah to operate the car. (Brief of Appellee, 4). From Beth and Shawnna's implied consent that Deborah drive the car, and from Deborah's actual consent for Wallace to drive, plaintiff says there was implied consent by Mr. and Mrs. Ahrens that Wallace drive the Volkswagen at the time of the accident.[3]

We must hold that, on this record, the judgment in favor of coverage cannot stand. Plaintiff had the burden of proof to establish coverage. See *Chronister v. State Farm Mutual Automobile Insurance Co.,* 72 N.M. 159, 381 P.2d 673, 675; 46 C.J.S. Insurance § 1641. Under the terms of the omnibus clause, permission of the named insureds, Mr. and Mrs. Ahrens, to the operation and actual use of the Volkswagen was required for coverage to apply. The only plausible theory in this case is that permission flowed from the parents to Beth and Shawnna, from them to Deborah, and from Deborah then to Wallace, the driver at the time of the accident. As noted, however, Beth and Shawnna were not told by Deborah that Wallace would even be accompanying Deborah and Helen the night of the accident and, of course, the parents did not even know that Deborah was going to use the car.

In view of the broad permission given by the parents to Beth and Shawnna for use of the family cars, an inference might be drawn that the older daughters as first permittees could permit Deborah to use the Volkswagen. See *Gillen v. Globe Indemnity Co.,* 377 F.2d 328, 331 (8th Cir.); *Krebsbach v. Miller,* 22 Wis.2d 171, 125 N.W.2d 408, 411; *Baesler v. Globe Indemnity Co.,* 33 N.J. 148, 162 A.2d 854, 857; *Government Employees Insurance Co. v. Lammert,* 483 S.W.2d 652 (Mo.Ct.App.). The trial judge apparently accepted such a view as valid under Wyoming law since he charged the jury that "the named insured's permission to a second permittee need not be express, *but may be implied from the broad nature of scope of the initial permission,* or from the conduct of the parties and from the attendant facts and circumstances." (II R. 167) (emphasis added).

The difficulty, however, is that here it is not the driving of Deborah as a second permittee which is in question, but that of Wallace as a *third* permittee. We note again that neither of the first permittees, Beth and Shawnna, were told by Deborah that Wallace was to be in the car with Deborah and Helen. We are convinced that implied permission cannot be stretched so far as to include the driving of Wallace on the night of the accident. See *West v. McNamara,* 159 Ohio St. 187, 111 N.E.2d 909; *Bailey v. General Insurance Co.,* 265 N.C. 675, 144 S.E.2d 898; *Novo v. Employers' Liability Assurance Corp.,* 295 Mass. 232, 3 N.E.2d 737, denying coverage as to third permittees.[4] A scintilla of evidence,

---

**3.** There is no evidence which would support an inference that Deborah had direct permission to drive the Volkswagen from her parents. For this reason it cannot be said that Wallace had implied permission from Mr. and Mrs. Ahrens as the named insureds merely because he had Deborah's actual permission to drive. See *Travelers Insurance Co. v. Weatherford,* 520 S.W.2d 726 (Tenn.); *State Farm Mutual Automobile Insurance Co. v. Strang,* 27 Utah 2d 362, 496 P.2d 707; *Bilsten v. Porter,* 547 P.2d 255 (Colo.Ct.App.).

**4.** We find only one case holding that a third permittee was covered under an omnibus clause and it is easily distinguished from this

case, as well as from *West, Bailey* and *Novo.* In *Boyer v. Massachusetts Bonding & Insurance Co.,* 277 Mass. 359, 178 N.E. 523, the named insured lent the vehicle to his son (the first permittee) who in turn permitted one Chester Carter (the second permittee) to take the car to Massachusetts and have use of it, and then leave it with his family to be sold. Chester Carter left the car with his father, who permitted Chester's brother Lloyd to use the car, and Lloyd's use resulted in the accident. It was found that the insured's son (the first permittee) had been given full use and custody of the car and that his acts were within his authority.

such as the remote permission of the parents given to Beth and Shawnna to drive the family cars, was not enough to raise a jury question of implied permission for Wallace to drive the Volkswagen. We are convinced that the evidence points only one way and is not susceptible of a reasonable inference that Wallace had any implied permission of the parents to drive their car. *Bertot v. School District No. 1, supra,* 522 F.2d 1171, 1175–76.

We find two Wyoming cases dealing with omnibus clauses, *Wyoming Farm Bureau Mutual Insurance Co. v. May,* 434 P.2d 507 (Wyo.), and *Phoenix Assurance Co. v. Latta,* 373 P.2d 146 (Wyo.). These cases do not support the plaintiff's theory for extending implied permission as far as Deborah's friend Wallace, and we feel they indicate that the Wyoming courts would not go that far.[5] We are mindful that the views of a resident district judge on the unsettled law of his state are persuasive and ordinarily accepted. *Sade v. Northern Natural Gas Co.,* 483 F.2d 230, 234 (10th Cir.). However, regardless of whether some such expression of views on state law was made here by the trial court's rulings and charge,[6] or whether

the court merely treated the issue as one for the jury, we feel it was clearly error on this record to enter judgment affording coverage to Wallace.[7] The evidence simply does not stretch far enough to support any reasonable inference that Wallace had implied permission from the named insureds, Mr. and Mrs. Ahrens, for coverage under the omnibus clause as written.

## II

■ As another basis for sustaining the judgment, plaintiff argues that the facts did not even involve a primary-secondary permission situation, that this was rather a situation where the two older daughters became the named insureds because of the mother's blindness, and that since there was no way in which JoAnn Ahrens could have operated the vehicle herself, her designation as a "named insured" was only a technicality. (Brief of Appellee, 4). Thus, the argument seems to be that Deborah was a *first* permittee authorized to drive by Beth and Shawnna as named insureds, that Wallace was admittedly authorized by Deborah to drive, and that the reasoning of cases re-

On appeal, the Massachusetts Court referred to the fact that the insured "knew what his son had done, and [that] it could be found that he assented to the use of the vehicle by the Carters, although the details of that use were not specifically authorized." Thus, *Boyer* is unlike the instant case where the named insureds had no knowledge that either Deborah or Wallace would use the car.

5. Thus, in *Phoenix Assurance Co. v. Latta, supra,* 373 P.2d at 150, although holding that coverage applied, the court stated that initial permission to use an automobile would not suffice in all cases to bring the use of the vehicle within coverage of an omnibus clause, contrary to the liberal view adopted by some authorities. Likewise, in *Wyoming Farm Bureau Mutual Insurance Co. v. May, supra,* 434 P.2d at 510–11, the court cited cases in support of a no-coverage holding, several of which express the view that general permission by a named insured to another is not as such sufficient to imply like permission to a second, unknown permittee. See *e. g., General Casualty Co. v. Woodby,* 238 F.2d 452, 455 (6th Cir.); *Aetna Casualty & Surety Co. v. De Maison,* 213 F.2d 826, 830–31, 834 (3d Cir.); *Howell v. Accident & Casualty Insurance Co.,* 32 Tenn.App. 83, 221 S.W.2d 901, 905.

6. As noted, the trial judge referred in the charge to implied permission to a *second* permittee only, and he apparently found some basis for treating Wallace as a second permittee. On this record we do not, however, find any basis for so treating Wallace. There was no proof that Deborah was a *first* permittee of the parents; her permission to use the car can only be premised on implied permission coming to her through her sisters. Thus Deborah was at best a *second* permittee and Wallace a *third* permittee—too remote to have implied permission of the parents to use the car.

7. Plaintiff relies, *inter alia,* on *State Farm Mutual Automobile Insurance Co. v. Cook,* 186 Va. 658, 43 S.E.2d 863 and *Baesler v. Globe Indemnity Co.,* 33 N.J. 148, 162 A.2d 854. The holding in *Cook* and the dictum in *Baesler* would merely uphold coverage as to a *second* permittee given permission to drive by a first permittee having general use of the vehicle. The cases in no way support extension of coverage as far as a third permittee like Wallace, whose use of the vehicle had not been disclosed by Deborah to the named insureds or to the first permittees, Beth and Shawnna.

jecting coverage of third permittees as too remote is therefore not applicable.

We cannot agree with the position that Beth and Shawnna should be treated as named insureds. It is clear that by the terms of the policy the "named insureds" were defined as Robert and JoAnn Ahrens.[8] That term carries special meaning in such policies affecting the rights and obligations of the parties. We cannot "rewrite the policy," *American Casualty Co. v. Myrick,* 304 F.2d 179, 184 (5th Cir.), because of the unusual circumstances in the family. See *Alm v. Hartford Fire Insurance Co.,* 369 P.2d 216, 217 (Wyo.). The family circumstances are relevant, as we have recognized, in connection with the factual issue relating to implied permission for use of the family cars. However, nothing in the facts here demonstrates a change in the agreement of the policyholders with the company, as was the case in *Unigard Insurance Co. v. Studer,* 536 F.2d 1337 (10th Cir.), where an endorsement to the policy effected a change naming an additional insured. The insurer has a right to assume that the risk undertaken will not be enlarged beyond the agreement. See *Travelers Insurance Co. v. Weatherford,* 520 S.W.2d 726, 728 (Tenn.). We therefore feel there is no warrant for varying from the terms of the policy definition of the "named insured."

■ Plaintiff Curtis further contends that if the company were to prevail here, then an undesirable situation would result, contrary to the public's understanding about insurance coverage. The argument is that if any children were riding in a vehicle driven and operated by a child of the owner, and that child were to permit another child to drive, then according to the company there would be no coverage, contrary to the public's expectation. This policy argument does not persuade us. We cannot impose liability contrary to the terms of the agreement and without justification in the facts of record. As the Supreme Court of

Wyoming stated in *Wyoming Farm Bureau Mutual Insurance Co. v. May, supra,* 434 P.2d at 511–12, in rejecting a similar public policy argument:

> Granting that the need for better regulation of use of highways is a meritorious and even a necessary objective, to argue that liability coverage of one person should be extended to cover another simply because it is desirable that all drivers of motor vehicles should be covered, is whimsical and unsupported either in reason or by law. This contention is without merit.

For these reasons we conclude that the verdict and judgment cannot stand and that the defendant was entitled to judgment notwithstanding the verdict. Accordingly, the judgment is reversed and the cause is remanded for entry of judgment in accordance with this opinion.

McKAY, Circuit Judge, dissenting:

The critical determination in this case is what level of permittee status various individuals had under the contract of insurance covering the Ahrens family automobiles. Since the trial court submitted that issue to the jury under proper instructions and the jury resolved it in favor of the plaintiff injured party, we may upset the refusal of the trial court to give a judgment notwithstanding the verdict only if, as the majority correctly observes, the evidence points only one way—against the verdict. The standard has not troubled the courts; its application has.

I am simply unable to say that there was insufficient evidence to allow the case to go to the jury. I concede that the plaintiff's evidence was somewhat confused and, indeed, even contradictory. However, as to the permission given by the parents to the daughter Debbie, I believe there was more than a scintilla of evidence in support of the conclusion that she had adequate permission to use the family automobile. Testifying at

---

**8.** While plaintiff's exhibit 1, a copy of the policy, does not contain the declarations portion of the policy, it is common ground between the parties that the named insureds, at least as stated in the policy, were Robert and JoAnn Ahrens. The trial judge so instructed the jury (II R. 166), and there is no contention to the contrary by either party.

trial, Debbie's father suggested that his daughter had permission to drive:

I think they asked Joe if we ever specifically told Debbie that she could not take the car or drive. I think this is in reference to that, that I said we never, you know, specified that she couldn't take the car, but it was understood on down the line, that I think it probably started with Beth and then Shawnna and then Debbie.

Record, vol. 2, at 146. In the context of the Ahrens' familial situation, where Mrs. Ahrens' disabilities caused the parents to delegate substantial responsibilities to their daughters, this statement constitutes more than a scintilla of evidence of permission.

It is admitted that if Debbie had the same authority that Beth and Shawnna had, then the verdict has to stand. Even though it was contradicted, the quoted testimony, in context, was sufficient to permit the jury to determine that there was a general understanding in the family supportive of its verdict. I therefore respectfully dissent and would sustain the decision below.