2001 OK CIV APP 117

Paul SUTTON, Plaintiff/Appellant,

v.

Mike SNIDER, Defendant/Appellee,

and

Marble Pierce Enterprises, L.L.C., d/b/a Super Bikes, Defendant.

No. 96,116.

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 24, 2001.

Jeff Eulberg, Chris Eulberg, Eulberg Law Offices, Oklahoma City, OK, for Plaintiff/Appellant.

Max C. Tuepker, Max C. Tuepker, P.C., Oklahoma City, OK, for Defendant/Appellee.

BUETTNER, Presiding Judge:

¶ 1 Plaintiff/Appellant Paul Sutton appeals from summary judgment entered in favor of Defendant/Appellee Mike Snider in Sutton's action to replevin a motorcycle. The trial court also granted a summary declaratory judgment that Snider is the legal owner of the motorcycle. Because we find no substantial controversy of material fact, and that Snider was entitled to judgment as a matter of law, we affirm.[1]

---

1. Sutton included Defendant Marble Pierce Enterprises, L.L.C., d/b/a/ Super Bikes as a defendant in his Petition, but summary judgment was granted only in favor of Snider. Although the judgment did not dispose of all of the claims or liabilities of all the parties, the trial court certi-

¶ 2 The motorcycle at issue in this case is a 1995 Harley Davidson, Model FLF, VIN 1HD1BML175Y048074. Sutton filed his Petition November 21, 2000, in which he alleged that on May 8, 2000, he delivered the motorcycle to Super Bikes "to allow them to display his motorcycle for sale." Sutton retained the keys and the title to the motorcycle, but it is undisputed that the keys are not necessary to drive the motorcycle. Sutton alleged that Snider thereafter came into possession of the motorcycle, despite Snider's awareness that Super Bikes "was merely displaying the Motorcycle and was not the owner." Sutton asserted that he was the owner of the motorcycle and was entitled to immediate possession of it, but that Snider refused to return the motorcycle to Sutton. Sutton also alleged causes of action for conversion against both Snider and Super Bikes. Finally, Sutton sought punitive damages from Super Bikes. Attached to his Petition were Exhibit A, the Oklahoma title to the motorcycle, issued October 7, 2000, and Exhibit b, a letter from Sutton, dated October 13, 2000, addressed to Snider and Jim and Wendy Marble (apparently the owners of Super Bikes) demanding either return of the motorcycle or immediate payment of $17,500. The letter asserted that if either the motorcycle or the money was not received by October 16, 2000, Sutton would take legal action.

¶ 3 In his answer, Snider responded that he took possession of the motorcycle only after paying Super Bikes the agreed purchase price. Snider further averred that he was aware the motorcycle was on consignment, but that he did not know any of the terms of the consignment agreement. Snider agreed with Sutton as to the value of the motorcycle. Snider denied the conversion allegations. Snider argued that Sutton is estopped from asserting his title to the motorcycle because Snider is a bona fide purchaser for value without notice of any title defect. Snider further alleged that he paid the price for the motorcycle to which Sutton had agreed. Snider also argued that Sutton

was trying to "jump title" by claiming that Snider held the motorcycle with notice that Sutton was the title owner, despite the fact that Sutton's title is dated after Snider purchased the motorcycle. Also in his answer, Snider asserted a counterclaim against Sutton and a crossclaim against Super Bikes for a declaratory judgment that Snider's possession and title are superior to Sutton's. Snider also sought injunctive relief ordering Sutton to deliver title to Snider. Snider asserted causes of action for fraud, breach of contract, and conversion against Super Bikes.

¶ 4 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.Supp.1993, Ch. 2, App.1. We will not reverse a grant of summary judgment where the record on appeal establishes no substantial controversy of material fact and that the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.

¶ 5 The material facts of this matter are not in dispute. Sutton placed the motorcycle with Super Bikes for display. Although Sutton asserts that he intended for the motorcycle to be "displayed for sale," Sutton also alleges that Super Bikes had no authority to sell the motorcycle. Nothing in the record indicates that Super Bikes had no authority to sell the motorcycle, except for Sutton's declaration to that effect in his affidavit. Additionally, the record includes a document titled "Consignment Agreement,"[2] signed by Sutton and Super Bikes, which provides:

As registered and legal owner of above mentioned vehicle:

I *Paul Sutton*, do willingly leave the above mentioned vehicle in the possession of Super Bikes, for the sole purpose of display

---

fied that there was no just reason for delay and directed that the matter be filed as a final judgment. See 12 O.S.Supp.1995 § 994 (A).

2. Exhibit B to Sutton's Response to Snider's Motion for Summary Judgment.

*with the intent to offer said vehicle for sale.* Further, in signing this form I agree that all liability for said vehicle is my sole responsibility and will not hold Super Bikes, any of their affiliates and/or associates accountable for any loss or damage to said vehicle for the duration of this agreement. Upon final sale of said vehicle, I will receive and expect to collect exactly: $ *18,000* and any monies over and above that amount shall be the property of Super Bikes. This agreement is valid for twenty (20) days when signed below by both the legal owner of said vehicle and authorized agent of Super Bikes. Super Bikes retains the right to remove from display said vehicle at any time.

(Emphasis added).

Underneath that portion of the document, there is a handwritten notation "low dollars 17,0[00]." It is undisputed that Snider paid Super Bikes $17,500 and took possession of the motorcycle. The record includes Snider's check for that amount as well as the sales agreement between Snider and Super Bikes, both dated August 17, 2000.[3] Sutton titled the motorcycle in his name October 7, 2000, after the instant dispute arose. Sutton asserts, and there is nothing to dispute, that Super Bikes has never paid Sutton for the motorcycle. In his demand letter dated October 13, 2000, Sutton demands either possession of the motorcycle or payment of $17,500.[4] This statement supports the facts that (1) the Consignment Agreement authorized Super Bikes to sell the motorcycle, and (2) Sutton was agreeable to the sale for $17,500. In addition, Sutton alleged in his petition that the value of the motorcycle was $17,500. Snider's Motion for Summary Judgment included "Undisputed Fact 3" that "Super Bikes deals in the sale of motorcycles." Sutton's response to this was "Statement number 3 is correct to the extent that Super Bikes displayed motorcycles for sale for motorcycle owners pursuant to their 'Consignment Agreement.' The statement 'Super Bikes deals in the sale of motorcycles' is vague and therefore disputed."

¶ 6 Sutton alleged as undisputed facts 1) he placed the motorcycle with Super Bikes "to display with the intent to offer said vehicle for sale"; 2) Sutton retained the title and the keys (which were unnecessary to start the motorcycle) when he placed the motorcycle at Super Bikes; 3) "the primary business of Super Bikes was to sell motorcycle accessories and other peoples (*sic*) motorcycles based upon their 'Consignment Agreement' "; 4) Snider saw the motorcycle on display at Super Bikes and knew that Super Bikes was not the owner of the motorcycle; 5) Snider did not inquire about whether Super Bikes had authority to sell the motorcycle, about the identity of the owner of the motorcycle, or about how the motorcycle was titled; 6) Snider paid for the motorcycle with a personal check payable to Super Bikes for $17,500; 7) Super Bikes was not authorized to relinquish possession of the motorcycle to anyone but Sutton; 8) Snider has possession of the motorcycle and has refused to return it to Sutton despite Sutton's demands.

¶ 7 This court has previously addressed a nearly identical dispute in an unpublished opinion, *Grider v. Tabor*, No. 95,213 (2000). In *Grider*, the plaintiff left his motorcycle with a consignment dealer who then traded the plaintiff's motorcycle to the defendant in exchange for a motorcycle owned by the defendant. After the dealer neglected to pay the plaintiff, the plaintiff sought to replevin the motorcycle from the defendant. This court affirmed summary judgment in favor of the defendant. That opinion noted that 12 O.S.Supp.1997 § 2–403(2) (part of the Oklahoma codification of the Uniform Commercial Code) provides that "(a)ny entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." That section further explains that " '(e)ntrusting' includes any delivery and any acquiescence in retention of possession *regardless of any condition expressed between the parties* to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods

---

**3.** Exhibit A to Snider's Motion for Summary Judgment.

**4.** Exhibit B to Snider's Motion for Summary Judgment.

have been such as to be larcenous under the criminal law." 12 O.S.Supp.1997 § 2–403(3) (emphasis added). A "buyer in the ordinary course of business" is defined as one who "in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind, but does not include a pawnbroker." 12A O.S.Supp.1994 § 1–201 (9).

¶ 8 The record on appeal establishes that Snider was a buyer in the ordinary course of business, that Sutton entrusted the motorcycle to Super Bikes (a merchant who deals in goods of that kind), and that Super Bikes had the legal authority to sell the motorcycle to Snider. Sutton's allegation that "Oklahoma is a title state" and that, accordingly, Snider was not a bona fide purchaser for value because Super Bikes did not give him the title to the motorcycle, is unfounded. Snider averred in his affidavit that Super Bikes told him that he would receive the title when his checked cleared. In *Medico Leasing Co. v. Smith*, 1969 OK 114, 457 P.2d 548, 552, the Oklahoma Supreme Court held that it was unnecessary for a dealer to deliver a certificate of title before conveying ownership and that the absence of the certificate of title does not invalidate the sale. The court therefore affirmed the trial court's denial of the replevin action. *Medico* also established that the burden rests on the entrusting party to show that the purchaser in ordinary course of business knew or should have known of any limitation of title. *Id.*

¶ 9 In the instant case, Sutton agreed that Snider did not have knowledge of the identity of the consignor and had no notice of any restrictions on Super Bikes' authority to sell the motorcycle. There is nothing in the record to support Sutton's claim that Super Bikes was not authorized to relinquish the motorcycle to anyone but Sutton. Sutton alleges that in order for the provisions of 12A O.S.Supp.1997 § 2–403 to apply, two requirements must be met: 1) the owner of the property must give "express or implied authority to sell, or delivers or *consigns to another personal property with indicia of ownership, or of authority to sell*"; and 2)

the purchaser must have obtained possession "without notice of the terms or conditions of the original delivery, consignment or sale," citing *Al's Auto Sales v. Moskowitz*, 1950 OK 94, 224 P.2d 588, 591, *203* Okla. 611. The Consignment Agreement establishes that the first requirement was met in the instant case-Sutton consigned the motorcycle to Super Bikes with indicia of authority to sell. Sutton has conceded in his statement of undisputed facts that Snider had no notice of the terms of the consignment, so that the second requirement has also been met. Sutton also asserts that the Uniform Commercial Code is not applicable in the instant case, but then proceeds to rely on provisions of Article 9 of the UCC to support his claim that a certificate of title is required to prove ownership in Oklahoma. The case on which Sutton relies for this claim, *Mitchell Coach Mfg. Co., Inc. v. Stephens*, 19 F.Supp.2d 1227 (N.D.Okla.1998), addresses the issue of perfecting security interests, a circumstance not involved in the instant case. In that case, one party paid for a motor home and received a paper title from the dealer, but the manufacturer refused to deliver possession because of nonpayment by the dealer. The court concluded that the party who held the title, the purchaser, was the owner. Those facts are easily distinguishable from the instant case because the person who held the paper title in *Mitchell* was in essence a bona fide purchaser for value, as Snider is in the instant case.

¶ 10 The rule in replevin cases such as the instant case remains that, where one party has delivered a chattel to another with apparent authority to sell, the bona fide purchaser for value secures ownership under the rule that where one of two parties must suffer loss due to the act of a third party, the loss shall fall on the party which made the loss possible. *Mahar v. White*, 1942 OK 84, 124 P.2d 260, 261, 190 Okla. 434; *Moskowitz, supra*, 224 P.2d at 591. In *Mahar*, the plaintiff delivered his GMC truck to an agent and asked that he secure a purchaser for it. The agent took the truck to the defendant and, upon being paid the purchase price, left the truck with the defendant and absconded with the money. The court held that the plaintiff

had made the loss possible by delivering his vehicle to the agent. Likewise, in the instant case, Sutton delivered the motorcycle to Super Bikes with the intent to offer it for sale at an agreed price. Super Bikes sold the motorcycle to Snider for a price within the agreed range, but apparently never paid Sutton. Under the rule of *Mahar* and under 12A O.S.Supp.1997 § 2–403 (2), Snider is an innocent purchaser for value and is the rightful owner of the motorcycle.

¶ 11 For these reasons, we affirm summary judgment on the replevin action. We also affirm the summary declaratory judgment that Snider is the legal owner of the motorcycle.[5]

¶ 12 AFFIRMED.

¶ 13 HANSEN, C.J., and GARRETT, J., concur.

---

**5.** Pursuant to 12 O.S.1991 § 1651, district courts may determine rights, status or other legal relations in matters of actual controversy.