**PUBLISH**
**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 8, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNIVERSAL UNDERWRITERS
INSURANCE COMPANY,

     Plaintiff - Appellee,

v.

TAMMY WINTON, individually and as
representative of the estate of Brant
Matthew Winton, deceased; MARCUS
ALLEN MOORE; DANIEL COSAR;
ALICE BURGESS, individually and as co-
personal representative of the estate of
Rebekah Jane Burgess, deceased;
PATRICK DOOLEY, as co-personal
representative of the estate of Rebekah
Jane Burgess, deceased,

     Defendants – Appellants,

and

RAYMOND ROBERTS, as personal
representative of the estate of Sofia
Roberts, deceased,

     Defendants.

_____

No. 15-6051

PHOENIX INSURANCE COMPANY,

     Plaintiff - Appellee,

and

No. 15-6052

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

      Intervenor Plaintiff - Appellee,

v.

TAMMY WINTON, individually and as
representative of the estate of Bryant
Matthew Winton, deceased; ALICE
BURGESS, individually and as co-personal
representative of the estate of Rebekah
Jane Burgess, deceased; PATRICK
DOOLEY, as co-personal representative of
the estate of Rebekah Jane Burgess,
deceased; MARCUS ALLEN MOORE;
DANIEL COSAR,

      Defendants - Appellants,

and

RAYMOND ROBERTS,

      Defendant.

_____

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. Nos. 5:13-CV-01215-R & 5:14-CV-00095-R)**

_____

Melissa S. Hedrick, Hedrick Law Firm, Oklahoma City, Oklahoma, and Blake Sonne, Sonne Law Firm, PLC, Norman, Oklahoma (Jose Gonzales, Jose Gonzales, PC, Purcell, Oklahoma, Steven L. Parker, Tecumseh, Oklahoma, Kirk A. Olson, Olson Law Firm, Oklahoma City, Oklahoma, and Joe E. White and Charles C. Weddle, III, White & Weddle, Oklahoma City, Oklahoma, with them on the briefs), for Defendants-Appellants.

Brittan Lance Buchanan, Buchanan DiMasi Dancy & Grabouski, Austin, Texas (Laura J. Grabouski, Buchanan DiMasi Dancy & Grabouski, Austin, Texas, and Daniel K. Zorn, Collins Zorn & Wagner, Oklahoma City, Oklahoma, with him on the brief), for Plaintiff-Appellee in 15-6051.

Jacqueline McCormick, Pierce Couch Hendrickson Baysinger & Green, Oklahoma City, Oklahoma, and Barbara Michaelides, Nicolaides, Fink, Thorpe, Michaelides & Sullivan, LLP, Chicago, Illinois (D. Lynn Babb, Pierce Couch Hendrickson Baysinger & Green, Oklahoma City, Oklahoma, Matthew J. Fink, Wen-Shin Cheng, and Jared K. Clapper, Nicolaides, Fink, Thorpe, Michaelides & Sullivan, LLP, Chicago, Illinois, with them on the brief), for Plaintiffs-Appellees in 15-6052.

———————————————————

Before **HARTZ**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.

———————————————————

**HARTZ**, Circuit Judge.

———————————————————

In the early morning of Sunday, November 11, 2007, Sofia Roberts caused a motor-vehicle accident that killed five people (including herself) and severely injured two others. She was driving a Chrysler 300 that she had obtained from the Marc Heitz Auto Valley automobile dealership (Heitz) on November 9, 2007. The Chrysler had been delivered to Heitz by Bob Moore Auto Group (Moore) earlier that day. Her estate was sued by the estates of Brant Winton and Rebecca Burgess (two of the others killed in the accident) and two survivors, Daniel Cosar and Marcus Moore (collectively, the Victims). The suits were settled with judgments of $3,000,000 each for the survivors and the Winton estate and $5,000,000 for the Burgess estate.

Allstate Insurance Company (Allstate), the insurer on Roberts's personal automobile-liability policy, contributed its policy limit of $50,000. The judgment limited execution to other applicable insurance policies. Three insurance carriers (for the Heitz or Moore dealerships)—Universal Underwriters Insurance Company (Universal), Phoenix Insurance Company (Phoenix), and National Union Fire Insurance Company of Pittsburgh, PA (National) (collectively, the Insurers)—then sued the Victims in the

3

United States District Court for the Western District of Oklahoma under diversity jurisdiction, *see* 28 U.S.C. § 1332, seeking declaratory judgments that their policies did not cover Roberts for the accident.

The district court granted summary judgment to the Insurers. The Victims appeal.[1] They argue that Heitz still owned the Chrysler at the time of the accident and that Universal is therefore responsible under the "garage" and "umbrella" coverages of its policy for Heitz. Alternatively, the Victims argue that Moore owned the vehicle at the time of the accident and that Phoenix and National are liable under their policies for Moore. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's judgments. We agree with the court that (1) Universal is not liable under its garage coverage because it indemnifies a Heitz customer only to the extent that the customer's personal liability policy does not provide the statutory mandatory coverage of $50,000 (which the Allstate policy provided), (2) the Universal umbrella policy does not cover customer liability, and (3) Phoenix and National are not liable under their policies because Moore did not own the Chrysler at the time of the accident.

## I.   DISCUSSION

Our review of a summary judgment is de novo, applying the same standard as the district court is to apply. *See Automax Hyundai S., LLC v. Zurich Am. Ins. Co.*, 720 F.3d 798, 803 (10th Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] The district court entered summary judgment in two separate cases—one in which Universal was plaintiff and one in which Phoenix and National were plaintiffs. We have consolidated the appeals from the two judgments.

4

matter of law." Fed. R. Civ. P. 56(a). All agree that the issues before us are to be resolved under Oklahoma state law. *See Automax Hyundai*, 720 F.3d at 804 (federal court applies law of forum state in diversity actions).

"Under Oklahoma law, an insurance policy is a contract and is interpreted accordingly." *Id.* "We accept the contract language in its plain, ordinary, and popular sense." *Broom v. Wilson Paving & Excavating, Inc.*, 356 P.3d 617, 628 (Okla. 2015) (internal quotation marks omitted). While ambiguities in a policy are construed against the insurer, *see id.* at 629, "[i]nsurance contracts are ambiguous only if they are susceptible to two constructions," *id.* at 628 (internal quotation marks omitted). "We do not indulge in forced or constrained interpretations to create and then to construe ambiguities in insurance contracts." *Id.* (internal quotation marks omitted).

## A. The Universal Policy

### 1.    The Garage Coverage

Universal has raised several grounds for why it owes no duty to indemnify the Roberts estate under its garage coverage. We need address only one. In our view, the policy provided coverage to Heitz customers only up to $50,000 (the minimum liability coverage required by Oklahoma law) and only to the extent that the customer's personal policy did not provide that amount. Because the Allstate policy provided $50,000 in coverage, there was no obligation left for the garage coverage. For purposes of this argument, Universal concedes the Victims' assertion that Heitz owned the Chrysler at the time of the accident.

Garage coverage (Part 500 of the Universal policy) protects against liability for damages for injury "caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD." *Universal Underwriters Ins. Co. v. Winton*, No. 15-6051, Aplt. App. (Universal App.), Vol. I at 212. Relevant here is *Auto Hazard*, which the policy defines to include "the ownership, maintenance, or use of any AUTO YOU own . . . and . . . furnished for the use of any person." *Id.* (The word *YOU* refers to the named insureds, which include Heitz.)

For Auto Hazard coverage the "WHO IS AN INSURED" section provides that the insureds include:

> (1) YOU;
>
> (2) Any of YOUR partners, paid employees, directors, stockholders, executive officers, a member of their household or a member of YOUR household, while using an AUTO covered by this Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be by YOU or within the scope of YOUR permission;
>
> (3) Any CONTRACT DRIVER;
>
> (4) *Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission.*

*Id*. at 215 (emphasis added). Ms. Roberts would have been an insured under part (4). The extent of her liability coverage is set by the "MOST WE WILL PAY" section under garage coverage. The relevant language of that section is:

> **THE MOST WE WILL PAY** – Regardless of the number of INSUREDS or AUTOS insured or premiums charged by this Coverage Part, persons or organizations who sustain INJURY or COVERED POLLUTION DAMAGES, claims made or SUITS brought, the most WE will pay is:

6

> (1) With respect to GARAGE OPERATIONS and AUTO HAZARD, the limit shown in the declarations [$300,000], for any one OCCURRENCE.
>
> . . . .
>
> *With respect to the AUTO HAZARD part (4) of WHO IS AN INSURED, the most WE will pay is that portion of such limit needed to comply with the minimum limits provision law in the jurisdiction where the OCCURRENCE took place. When there is other insurance applicable, WE will pay only the amount needed to comply with such minimum limits after such other insurance has been exhausted.*

*Id.* at 218–19 (emphasis added). The emphasized language makes clear that the purpose of the garage coverage under part (4)—which is what applies to Ms. Roberts—is to ensure that the driver will be protected up to the statutory minimum liability coverage for Oklahoma drivers: if other coverage does not reach that minimum, Universal will supply the remainder needed. In Oklahoma the applicable statutory minimum is $50,000. *See* 47 Okla. Stat. § 7-324(b)(2) (2004). The Victims do not dispute that the above provisions would limit the coverage of Ms. Roberts to $50,000; and because Allstate paid $50,000 under its policy, Universal would owe nothing.

The Victims contend, however, that another policy provision overrides that limit in the "MOST WE WILL PAY" section. They rely on an amendment to the policy applicable in Oklahoma (called the "Oklahoma State Amendatory Part" (the Amendment)), which modifies the "OTHER INSURANCE" section in the garage coverage. To understand this argument, we start with the garage coverage's original "OTHER INSURANCE" condition. It states that garage coverage for part (4) insureds is "excess," instead of "primary":

7

The insurance afforded by [the garage coverage] is primary, except it is *excess*: . . . (2) for any person or organization under part (3) or (4) of WHO IS AN INSURED with respect to the AUTO HAZARD.

Universal App., Vol. I at 221 (emphasis added). The Amendment limits the circumstances in which a dealer's liability coverage can be excess over the coverage provided by a customer's personal policy. It states:

Coverage Part 500 – GARAGE is changed as follows;
The OTHER INSURANCE Condition is changed by adding the following:
When two policies providing liability coverage apply to an AUTO and:
(a) One provides coverage to a named INSURED who is an authorized motor vehicle dealer, and
(b) The other provides coverage to a person not engaged in that business, and
(c) At the time of an ACCIDENT a person described in (b) is operating the AUTO then that person's liability insurance is primary and *the dealer's liability insurance is excess* over any insurance available to that person, *provided*:
(1) The person is operating the AUTO with the permission of the dealer, and
(2) The change in financial responsibility is evidenced by a release signed by the person operating the AUTO, and
(3) No fee or lease charge has been made by the dealer for the use of the AUTO.

*Id.* at 107 (emphasis added).

The Victims do not dispute that the conditions required for the garage coverage to be excess were satisfied here, and hence that the garage coverage was excess coverage in relation to Ms. Roberts's Allstate policy. Rather, they seem to be arguing that the garage coverage is excess but, in light of the Amendment, it is no longer governed by the "MOST WE WILL PAY" provision.

8

They begin by claiming that the "MOST WE WILL PAY" provision is an "escape clause" (that is, a provision that "disclaims any and all liability if other insurance is available," *Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc.*, 747 P.2d 947, 954 (Okla. 1987)) rather than an "excess clause" (that is, one under which there is coverage only after primary coverage has been exhausted, *see id.*). As best we can tell, they believe it is an escape clause because Universal escapes any liability if another policy provides the statutory minimum, even when the driver's liability exceeds that minimum. They say the Amendment, however, creates an ambiguity in the policy because it states that the policy (if the conditions are satisfied) is what the Victims would apparently consider a "pure" excess policy (that is, one without any escape-clause character), while the "MOST WE WILL PAY" provision is an escape clause. As a result of the ambiguity created by this conflict, they argue, we must limit the "MOST WE WILL PAY" provision and construe the policy, as amended, to provide the general policy limit of $300,000 above (in excess of) what another policy (in this case, the Allstate policy) provides.

We are not persuaded. The "MOST WE WILL PAY" provision is not ambiguous. It could not be clearer in providing coverage only so far as necessary to ensure that the driver has the minimum coverage required by law. The Victims would alter that language by referring to an amendment that does not even mention the "MOST WE WILL PAY" provision. The Amendment says only that it is changing the "OTHER INSURANCE" condition. And the change has nothing to do with the alleged "escape" character of the "MOST WE WILL PAY" provision. The change simply modifies the

9

unqualified statement in the original other-insurance provision that coverage "is excess," Universal App., Vol. I at 221, by adding the Amendment's language that the coverage is excess only if certain requirements are satisfied. Somehow the Victims believe that the term *excess* in the Amendment has an effect (overriding the escape component of the "MOST WE WILL PAY" provision) that the term did not have in the original other-insurance provision.[2] We reject the contention that this fanciful construction of policy language is a reasonable interpretation that creates an ambiguity in the Universal policy. We affirm the district court's ruling that once Allstate paid the $50,000, Universal owed nothing further under the garage coverage.

### 2.     The Umbrella Coverage

The Universal policy also provided umbrella coverage with a $15 million limit. The Victims argue that Ms. Roberts was an insured under this coverage. We disagree.

The umbrella part of the policy states that it "applies only to those insureds . . . designated for each coverage as identified in declarations item 2 by letter(s) or number." *Id.* at 248. Also, it defines the insureds as follows:

**WHO IS AN INSURED**

. . . .

With respect to any AUTO or watercraft:

(a)     YOU;

With respect to (1) any AUTO or watercraft used in YOUR business or (2) personal use of any AUTO owned or hired by YOU:

---

[2] The Victims never argue that the word *excess* in the original other-insurance provision created an ambiguity. But even if they did, we would reject the argument. Again, the "MOST WE WILL PAY" provision could not be clearer.

10

> (a)    any person or organization shown in the declarations for this Coverage Part as a "Designated Person".

Universal App., Vol. I at 251. The policy defines "YOU" as "the person or organization shown in the declarations as the Named Insured." *Id.* at 178. The Victims do not, and could not, dispute that Ms. Roberts is not listed by name (or even category) in "declarations item 2," *id.* at 248, "in the declarations . . . as a 'Designated Person,'" *id.* at 251, or "in the declarations as the Named Insured," *id.* at 178. We conclude that Ms. Roberts was not an insured.

The Victims nevertheless argue that Heitz was covered (which is undisputed) and that Ms. Roberts was covered because "WHO IS AN INSURED" includes "YOU . . . with respect to (1) any AUTO . . . used in YOUR business or (2) personal use of any AUTO owned or hired by YOU," *id.* at 251. They point out that the Chrysler was *used in Heitz's business* and was a car *owned by Heitz* that was being personally used. But they are confusing *what* is covered with *who* is covered. They may have an argument that there is coverage with respect to Ms. Roberts's accident, but that would mean only that Heitz itself would be covered if it were found liable with respect to the accident (for negligent entrustment or the like). That is far different from saying *Ms. Roberts's* liability is covered. Ms. Roberts is not an insured under the umbrella coverage, and it is irrelevant that she is not included in the list of excluded insureds.

The Victims also argue that our reading of the "WHO IS AN INSURED" provision is "nonsensical," noting that this reading would even exclude most Heitz employees. We see nothing nonsensical about such a reading. Most people would be

11

adequately protected by the $300,000 limit of the garage coverage.  Only those with the most assets require the higher limits of the umbrella policy.  We are unpersuaded by the unexplained contrary view expressed in *Empire Fire & Marine Ins. v. Keifer*, 483 F. Supp. 2d 591, 594 (N.D. Ohio 2007) ("[L]eav[ing] employees uncovered . . . makes no sense.").  We are also unpersuaded by the other case cited in support by the Victims: *Empire Fire & Marine Ins. v. Archer*, 2005 WL 3005772, at *7 (N.J. App. Ct. Nov. 10, 2005).  In that case the policy included a follow-form provision incorporating the coverage conditions of the underlying policy.  The provision stated:  "Unless a provision to the contrary appears in our policy, all the conditions, definitions, agreements, exclusions and limitations of the 'underlying insurance', including changes by endorsement, will apply to our Policy."  *Id.* at *2.  The Universal umbrella coverage, however, does not contain such a follow-form provision.  On the contrary, it is quite explicit about who is covered, as noted above.

## B.  The Phoenix and National Policies

The Victims concede that Ms. Roberts was covered under Moore's primary policy issued by Phoenix and its umbrella policy issued by National only if Moore owned the Chrysler at the time of the accident.  Although it is undisputed that Moore delivered the Chrysler to Heitz on Friday, November 9, 2007, two days before the accident, the Victims rely on the failure of Moore to transfer the vehicle certificate of title until the day after the accident.  We hold that Moore did not own the vehicle even though it had not transferred the title certificate.

12

Under the Oklahoma version of the Uniform Commercial Code, "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and *even though a document of title is to be delivered at a different time or place . . . .*"  12A Okla. Stat. § 2-401(2) (1961) (emphasis added).  Thus, in *Medico Leasing Co. v. Smith*, 457 P.2d 548, 551 (Okla. 1969), the Oklahoma Supreme Court held that despite failure to convey a certificate of title, "[t]he sale of [an] automobile [is] complete upon delivery of the car with the intent to sell."  It is undisputed that the facts here satisfy the statute and *Medico*.

The Victims argue, however, that these authorities were overridden by the later enactment of the Oklahoma Vehicle and License Registration Act (OVLRA), which states:  "It is the intent of the Legislature that the owner or owners of every vehicle in this state shall possess a certificate of title as proof of ownership and that every vehicle shall be registered in the name of the owner or owners thereof."  47 Okla. Stat. § 1103 (1985).  In support they cite *Mitchell Coach Mfg. Co. v. Stephens*, 19 F. Supp. 2d 1227, 1233 (N.D. Okla. 1998), which said that *Medico* had been superseded by OVLRA and now "certificates of title are 'proof of ownership.'"

We have no quarrel with the ultimate decision in *Mitchell*; but it did not accurately predict what the Oklahoma courts would rule with regard to the effect of a certificate of title on transfer of ownership after enactment of OVLRA.  In *Green v. Harris*, 70 P.3d 866, 867 (Okla. 2003), the plaintiff sued a minor's parents for negligent entrustment of a vehicle to a minor.  The mother argued she had no ownership interest in the vehicle, and

13

therefore was not liable, because her name was not on the title. *See id.* at 870. In rejecting her argument, the Oklahoma Supreme Court cited pre-OVLRA opinions in support of the proposition that "[m]otor vehicle certificates of title in Oklahoma are documents of convenience and are not necessarily controlling of ownership of an automobile." *Id.* at 871. More closely in point is *Sutton v. Snider*, 33 P.3d 309 (Okla. App. Ct. 2001). The owner of a motorcycle had permitted a dealer to display it for sale. *Id.* at 310. But when the motorcycle was purchased, the original owner sued for possession of the vehicle, relying on the fact that he held the title. *See id.* Citing *Medico*, the court stated that it is "unnecessary for a dealer to deliver a certificate of title before conveying ownership and that the absence of the certificate of title does not invalidate the sale." *Id.* at 312. *Sutton* distinguished *Mitchell*, saying that it "addresses the issue of perfecting security interests, a circumstance not involved in the instant case." *Id.*[3]

The ownership of the Chrysler passed to Heitz from Moore when Heitz took possession on November 9, 2007. Because Moore was not the owner of the vehicle at the time of the accident, the Phoenix and National policies did not cover Ms. Roberts.

---

[3] The Victims also make a passing reference to 47 Okla. Stat. § 1107.4 (2005) as supporting their argument. They point out that when someone transfers a vehicle and files a written notice of the transfer with the state tax commission or a motor-license agent, the transferee is rebuttably presumed to be the owner (and subject to civil and criminal liability arising out of ownership). *See id.* § 1107.4(C). They assert that Moore is the presumed owner of the vehicle at the time of the accident because it had not filed such a notice by then. We are not persuaded. Such filing is permissive, not mandatory, *see id.* § 1107.4(A) ("the transferor *may* file a written notice of transfer" (emphasis added)); *see also id.* § 1107.4(D) (statute does not impose liability on person who transfers ownership but does not file a notice of transfer).

14

## II. CONCLUSION

We AFFIRM the judgments of the district court.