**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 12, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

     Plaintiff - Appellee,

v.

CRYSTAL KOWALIK, as mother and
guardian of Aden Ryan Elsass and
administrator of the estate of Steven Ryan
Elsass,

     Defendant - Appellant,

and

BRUCE A. ROBERTSON, special
administrator of the estate of Amber Lee
Brown,

     Defendant.

No. 18-6023
(D.C. No. 5:17-CV-00002-SLP)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **McKAY** and **MATHESON**, Circuit Judges.
_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

This diversity action arises from a single-car automobile accident in which Amber Brown, the driver, and Steven Ryan Elsass, a passenger, were killed. Appellant Crystal Kowalik brought a wrongful death action against Ms. Brown's estate for the benefit of Mr. Elsass's survivors. Ms. Brown's estate tendered the lawsuit to Appellee State Farm Mutual Automobile Insurance Company, which had issued an automobile liability policy to the car's owner, James Cheek.

State Farm filed this declaratory judgment action against Ms. Kowalik and Ms. Brown's estate seeking a declaration that its policy did not provide coverage for Ms. Brown's alleged liability beyond the compulsory statutory minimum because Ms. Brown was not using the insured vehicle within the scope of any permission granted by Mr. Cheek.

The district court granted summary judgment to State Farm, and Ms. Kowalik appealed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

The following facts are undisputed:

The vehicle involved in the accident was a Porsche that Mr. Cheek had purchased for his wife, Jennifer Cheek, to drive. He and his wife were separated at the time and living in separate residences. Mr. Cheek insured the Porsche through a State Farm policy ("Policy") that named him as the sole insured. But under the Policy's omnibus clause, liability coverage under the Policy also extended to "any other person for his or her use of" the Porsche, provided the vehicle was "used within the scope of [the named insured's] consent." Jt. App. at 175-76 (emphasis omitted).

2

Mr. Cheek gave his estranged wife permission "to do whatever she wanted with" the Porsche, *id.* at 253, including loaning it to other people.

Ms. Cheek began dating Mr. Elsass, a police officer, and over a five-month period allowed him to drive the Porsche twice, once to demonstrate defensive driving techniques as she rode with him and another time for a period of two or three days. In both cases, Mr. Elsass asked Ms. Cheek for permission to drive the vehicle and obtained the keys from her. Mr. Cheek knew that Ms. Cheek occasionally allowed Mr. Elsass to drive the Porsche and did not object.

On Monday, December 3, 2012, Mr. Elsass asked Ms. Check if he could borrow the Porsche for a third time to drive to work. She agreed. They also discussed that he needed to return the car Tuesday night or Wednesday because it was to be sold. The original plan was for Mr. Elsass to return the Porsche on his way to work on Tuesday evening, but he texted Ms. Cheek on Tuesday to say that he might not go into work that evening because of an injury he had suffered during his previous shift. Ms. Cheek responded with a text inviting him to spend the evening with her if he did not go to work, but she did not hear back from him. She assumed he had gone to work in the Porsche.

Ms. Cheek later learned that Mr. Elsass had not gone to work on Tuesday evening, and that he and Amber Brown had been killed in the early morning hours of Wednesday, December 5, in a single-car accident in the Porsche. Ms. Brown, a bartender at a local bar Mr. Elsass frequented, was driving the Porsche at the time of

3

the accident and was acutely intoxicated. It is undisputed that Mr. Elsass was also intoxicated.

Neither Mr. Cheek nor Ms. Cheek knew Ms. Brown. Ms. Cheek testified that she did not give Mr. Elsass permission to allow others to drive the Porsche and under no circumstances would she have allowed Ms. Brown to drive the vehicle. She also testified that she had not given Mr. Elsass permission to use the Porsche after drinking alcoholic beverages and would not have consented to his using the Porsche if she had known he would be drinking.

## II. DISCUSSION

### A. Standard of Review

We review the district court's grant of summary judgment de novo, viewing the factual record and making reasonable inferences from it in the light most favorable to Ms. Kowalik as the non-moving party. *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird*, 832 F.3d at 1199 (brackets and internal quotation marks omitted).

4

**B. Compulsory and Non-compulsory Omnibus
Coverage under Oklahoma Law**

Because this is a diversity action arising in Oklahoma, it is governed by

Oklahoma law. *See Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103,

1105-06 (10th Cir. 2016). Under Oklahoma law, "[a]n omnibus clause in a motor

vehicle insurance policy extends liability coverage to the named insured and other

persons using the insured vehicle with permission." *O'Neill v. Long*, 54 P.3d 109,

112-13 (Okla. 2002). Under Oklahoma's Compulsory Insurance Law, Okla. Stat. tit. 47,

§ 7-600(1)(b), an automobile liability insurance policy must provide "compulsory"

omnibus coverage up to specified statutory minimums without regard to any restrictions

the policy places on the scope of consent granted to the person using the insured vehicle.

*See O'Neill*, 54 P.3d at 114. But "[o]nce it appears that the legislative purpose has been

served, the statute's mandate is satisfied. Consequently, freedom-of-contract principles

control as to any motor vehicle liability coverage in excess of that required by statute."

*Id.* at 115 (internal quotation marks omitted).

**C. The Policy and Permissive Use**

In this case, State Farm agreed to provide the compulsory coverage limits to

Ms. Brown's estate to satisfy any claims arising from the alleged wrongful death of

Mr. Elsass, but denied it was required to provide coverage beyond these statutory

minimums because the terms of the Policy do not require it to do so.[1] As relevant here,

---

[1] The Policy provided liability coverage for bodily injury claims with limits of $250,000 per injured person and $500,000 per accident, Jt. App. at 169, considerably

5

the Policy provides that State Farm "will pay damages an ***insured*** becomes legally liable to pay because of . . . ***bodily injury*** to others . . . caused by an accident that involves a vehicle for which that ***insured*** is provided Liability Coverage by this policy." Jt. App. at 200. The Policy defines an "insured" to include "any other person for his or her use of" the insured vehicle, provided the vehicle was "used within the scope of [the named insured's] consent." *Id.* at 176.

Based on these Policy terms, the question presented on summary judgment was whether a reasonable jury could find that Ms. Brown was an insured person under the Policy at the time of the accident so that State Farm must pay up to the Policy's limits for any liability she had for Mr. Elsass's death. State Farm contended Ms. Brown was not an insured under the Policy because the undisputed facts establish that she was not using the Porsche within the scope of permission granted by State Farm's named insured, Mr. Cheek, when the accident occurred. The district court agreed and granted summary judgment to State Farm. We affirm.

### D. Governing Law on Permissive Use

Under Oklahoma law, permission to use a vehicle can be either express or implied. *Farmers All. Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1388 (10th Cir. 1978). Express permission is generally permission that is directly and distinctly stated. *See* 8 STEVEN PLITT ET AL., COUCH ON INSURANCE § 112:38 at 112-80 (3d ed. rev. 2014). Implied permission can result "from the relationship of the parties and their course of

---

more than the compulsory statutory mandate of $25,000 per person and $50,000 per accident, Okla. Stat. tit. 47, § 7-103(2)(b).

conduct in which they mutually acquiesced." *Farmers All.*, 570 F.2d at 1388

(internal quotation marks omitted). It can also arise "from a course of conduct

pursued with knowledge of the facts for such time and in such manner as to signify

clearly and convincingly an understanding consent which amounts in law to a grant

of the privilege involved." *Id.* (internal quotation marks omitted). But even where

express or implied permission exists, a material deviation from the scope of this

permission defeats a claim for non-compulsory omnibus liability coverage for a

permittee's negligent operation of the insured vehicle. *See O'Neill*, 54 P.3d at 116.

### E. Permission to Ms. Brown

### 1. Express or Implied Permission

There is no evidence that Mr. Cheek gave Ms. Brown express permission to

use the Porsche. The question then is whether he gave Ms. Brown implied

permission to do so and, if so, whether she was using the vehicle within the scope of

such permission at the time of the accident.

We agree with the district court there is no evidence from which a reasonable

jury could conclude Ms. Brown had implied permission from Mr. Cheek to use the

Porsche or, if such permission existed, that she was using the vehicle within the

scope of that consent at the time of the accident. First, there was no relationship or

course of conduct between Mr. Cheek and Ms. Brown, nor did he have reason to

know of and acquiesce to her use of the Porsche. Nor can it be inferred that, because

he consented to Ms. Cheek's using and loaning the car to others as she saw fit,

Mr. Cheek impliedly consented to Ms. Brown's using the Porsche. For permission

7

from Mr. Cheek to be inferred on this basis, Ms. Cheek at minimum must have expressly or impliedly consented to Ms. Brown's use of the Porsche. There is no evidence that she did so. Ms. Brown was also a stranger to her and she had no reason to know that Mr. Elsass would allow Ms. Brown to drive the Porsche.

## 2. Implied Permission to Ms. Brown as a Second or Third Permittee

Ms. Kowalik argues that Mr. Cheek consented to Ms. Brown's use of the Porsche because he impliedly gave permission directly to Mr. Elsass to use the Porsche without restriction. As a result, Ms. Kowalik argues, Mr. Elsass was a "first permittee" who could allow a "second permittee," meaning Ms. Brown or anyone else, to operate or use the Porsche.

There are a number of flaws in this argument, beginning with Ms. Kowalik's contention that Mr. Elsass was a first permittee of Mr. Cheek. The district court found, and State Farm does not dispute, that Mr. Cheek impliedly permitted Mr. Elsass to use the Porsche. Jt. App. at 272-73. But the district court based this finding on the express consent Mr. Cheek had given to Ms. Cheek to allow others to use the vehicle, i.e., the permission Mr. Cheek had given to Ms. Cheek as the first permittee. *Id.* at 272. The other factors cited by the district court—Mr. Cheek's knowledge that Ms. Cheek occasionally allowed Mr. Elsass to use the Porsche and his lack of objection to this use—also relate to the permission Ms. Cheek had given to Mr. Elsass to use the Porsche. Mr. Elsass's use of the Porsche was also dependent on his receiving express permission—and the car keys—from Ms. Cheek, not Mr. Cheek.

8

Ms. Kowalick has not directed us to any evidence that Mr. Cheek and Mr. Elsass had any relationship or course of conduct that would allow an inference that Mr. Cheek had impliedly consented to Mr. Elsass using the Porsche without regard to Ms. Cheek's use and control over the vehicle as the first permittee. As a result, there is no evidence from which a reasonable jury could infer that Mr. Elsass was a first permittee with respect to the Porsche, let alone one with unrestricted permission from Mr. Cheek to use the Porsche as he saw fit.[2] Instead, the undisputed

---

[2] We also see no evidence in the record that would allow a reasonable jury to find that Mr. Cheek impliedly gave Mr. Elsass permission for general and unlimited use of the Porsche, including permission for him to allow others to drive the vehicle. To the contrary, as just described, the evidence indicates that Mr. Cheek's implied permission to Mr. Elsass was conditioned on Ms. Cheek's consent, and that her permission for Mr. Elsass to use the Porsche was limited because he had to ask for and receive express permission from her for each use.

As the district court found, the undisputed evidence also shows that Mr. Elsass's use of the vehicle at the time of the accident was limited, because Ms. Cheek had allowed him to take the Porsche so he could travel to and from work. That Ms. Cheek at that time did not expressly forbid Mr. Elsass from allowing an inebriated person to drive the car does not reasonably support an inference that she or Mr. Cheek expressly or impliedly consented to his allowing Ms. Brown to drive the Porsche.

In other words, under the undisputed facts, Mr. Elsass's decision to allow Ms. Brown, who was unknown to the Cheeks, to drive the Porsche after a night of drinking grossly deviated from the scope of the permission he had received from both Mr. and Ms. Cheek to use the Porsche. In addition, Ms. Kowalik's assumption that Mr. Elsass could extend omnibus coverage to Ms. Brown by allowing her to drive the Porsche is contrary to the general rule that a second permittee "cannot effectively permit a third permittee to operate the vehicle so as to bring this person within the protection of the omnibus clause." COUCH ON INSURANCE § 112:49 at 112-101; *see Curtis v. State Farm Mut. Auto. Ins. Co.*, 591 F.2d 572, 576 n.3 (10th Cir. 1979) (concluding third permittee did not have implied permission from named insureds to drive the insured vehicle merely because he had the second permittee's actual permission to do so).

evidence demonstrates that Mr. Elsass was the second permittee whose use was limited by first permittee Ms. Cheek, and that Ms. Brown was the third permittee.

This conclusion is significant in determining whether the Policy provides coverage for Ms. Brown's alleged liability for Mr. Elsass's death.  This is so because:

> It has generally been held that where A, the owner of an automobile, gives general permission to B to use the automobile and B gives permission to C to use the automobile solely for C's purpose, benefit, or advantage, and the automobile is involved in an accident while being so used by C, such use is not with the permission of the named insured.

*Samuels v. Am. Auto Ins. Co.*, 150 F.2d 221, 223 (10th Cir. 1945) (interpreting Oklahoma law); *see Duff v. All. Mut. Cas. Co.*, 296 F.2d 506, 508-09 (10th Cir. 1961) (same).  In this case, A is Mr. Cheek, B is Ms. Cheek, and C is Mr. Elsass.  As a third permittee, Ms. Brown's permission to use of the Porsche logically could not be greater than that of Mr. Elsass, so she, at best, also would be C under this rule.

The district court concluded based on *Samuels* that Ms. Brown did not have implied consent from Mr. or Ms. Cheek to use the Porsche because the "only reasonable inference to be drawn from the factual record" is that Mr. Elsass and Ms. Brown were using the Porsche "solely for their own purpose, benefit or advantage" at the time of the accident.  Jt. App. at 275.  We agree with this conclusion, which Ms. Kowalik does not challenge on appeal.  Ms. Kowalik further concedes that *Samuels* accurately states the law.  *See* Reply Br. at 3.[3]

---

[3]  Contrary to this concession, Ms. Kowalik cites a district court case decided under Kansas law for the proposition that "[t]he benefit derived from the use of the car need not be for the named insured" for a second permittee to have implied

Accordingly, under *Samuels*, Mr. Elsass's and Ms. Brown's use of the Porsche on the night of the accident was "not within the permission of the named insured" because it was not being used for Mr. Cheek's benefit at the time of the accident. *See Samuels*, 150 F.2d at 223; *see also Duff*, 296 F.2d at 508-09 (relying on *Samuels* to hold that second permittee was not driving the insured vehicle with implied permission of the named insured because his use of the vehicle did not serve any purpose, benefit, or advantage of either the named insured or the first permittee).[4]

---

permission from a named insured to use the car. *See* Aplt. Opening Br. at 14-15 (quoting *Citizens Ins. Co. v. Charity*, 866 F. Supp. 1314, 1318 (D. Kan. 1994)). But Ms. Kowalik omits the remainder of the district court's holding, which is that under Kansas law "[b]enefit to the first permittee alone is sufficient." *Citizens Ins. Co.*, 866 F. Supp. at 1319 (citing *U.S. Fid. & Guar. Co. v. Cont'l Ins. Co.*, 573 P.2d 1106, 1109 (Kan. App. 1977)). Even under this authority, therefore, Mr. Elsass's and Ms. Brown's use of the Porsche would not have been within the implied permission of Mr. Cheek because the record indisputably shows that their use of the Porsche did not benefit either him or Ms. Cheek, the first permittee.

[4] Ms. Kowalik argues that *United Services Automobile Association v. Preferred Accident Insurance Co.*, 190 F.2d 404 (10th Cir. 1951), supports omnibus coverage for Ms. Brown, but *USAA* is distinguishable. First, that case did not involve a third permittee as is the case here. Second, *USAA* involved unusual circumstances that are not present here. In *USAA*, a son transferred title and delivered possession of his Ford car, which was insured by USAA, to his mother just before he was deployed overseas. While he was overseas, USAA issued a new policy insuring the Ford that named the mother as the named insured. Immediately after her son's return from overseas duty, the mother delivered the Ford back to her son, but they did not execute a change in title or in the policy insuring the vehicle even though they both contemplated that he would again possess and use the car as though he held title to it. *See id.* at 405, 407. The son subsequently lent the Ford to a friend, who was involved in an accident while using it for his own purposes. The court held that under "these peculiar circumstances," the friend (the second permittee), was using the vehicle with the implied permission of the mother. *Id.* at 407.

11

### 3. Mr. Elsass as the Insured and Ms. Brown as his Agent

In challenging the district court's decision, Ms. Kowalik does not contend that Ms. Brown had implied permission from Mr. Cheek to use the Porsche as is necessary for her to be an "insured" under the Policy. *See* Jt. App. at 175-76 (defining an "insured" to include persons using the insured vehicle "within the scope of [the named insured's] consent"). Instead she argues that Mr. Elsass was the actual user of the Porsche at the time of the accident because he was a passenger in the vehicle and Ms. Brown was only operating the vehicle as his agent. As a result, Ms. Kowalik denies Ms. Brown used the Porsche or was a permittee at all under the Policy because "a new use had not been created in Brown [at the time of the accident]. The use was still Mr. Elsass's." Aplt. Reply Br. at 6 (emphasis omitted). Ms. Kowalik further asserts that Mr. Elsass's use of the Porsche at the time of the accident was within the scope of Mr. Cheek's consent. Under Ms. Kowalik's theory, therefore, it was Mr. Elsass, not Ms. Brown, who was the insured at the time of the accident because he was the only person using the Porsche within the meaning of the Policy and, according to Ms. Kowalik, was doing so within the scope of Mr. Cheek's consent.

Even assuming this theory has some basis in Oklahoma law (which we need not decide) and the undisputed facts, it is of no benefit to Ms. Kowalik for several reasons. One is that even if Mr. Elsass was the one "using" the Porsche at the time of the accident as she contends, he indisputably was doing so for solely personal reasons and thus, as just discussed, was not using the vehicle within the permission of the

12

named insured. *See Samuels*, 150 F.2d at 223; *Duff*, 296 F.2d at 508-09.[5] Another is that this theory is contrary to the "widely stated" rule that a second permittee cannot bring a third permittee "within the protection of the omnibus clause even where the third permittee is acting as an agent of the second permittee." COUCH ON INSURANCE § 112:49 at 112-101.

Finally and perhaps most importantly, coverage for Ms. Brown's alleged negligence would not arise under the Policy even if Ms. Kowalik's agency theory was credited in full. This is so because her argument ignores the Policy's other requirements for establishing liability coverage for her wrongful death claim against Ms. Brown. As noted earlier, the Policy's liability coverage provision states that State Farm "will pay damages [1] an ***insured*** [2] becomes legally liable to pay [3] because of . . . ***bodily injury*** to others . . . [4] caused by an accident that involves a vehicle for which that ***insured*** is provided Liability Coverage by this policy." Jt. App. at 200. Thus, if Mr. Elsass is the insured, then the Policy will pay damages for bodily injury "*to others*" that *he*, as the insured, "*becomes legally liable to pay*" as a result of the accident involving the Porsche. *Id.* (emphasis added). Here, however, Ms. Kowalik is seeking to recover damages for the wrongful death of Mr. Elsass, the alleged insured, not "others." She also fails to explain how Mr. Elsass, if he is the insured, can be found

---

[5] In a similar vein, the district court rejected Ms. Kowalik's agency theory because the primary authority on which Ms. Kowalik relied in the district court stated that the theory is only available if the insured vehicle was being used for the purpose or benefit of the named insured or the first permittee at the time of the accident. *See* Jt. App. at 277-78 (discussing *Payne v. Erie Ins. Exch.*, 84 A.3d 212, 223 (Md. App. 2014)).

13

"legally liable" to pay damages to himself for his own wrongful death. As a result, even if we assume that Mr. Elsass was using the Porsche at the time of his death within the scope of Mr. Cheek's consent, with Ms. Brown merely operating the vehicle as his agent, and that the Oklahoma courts would accept that he was an insured under these circumstances, there is no coverage under the Policy for Ms. Kowalik's wrongful death action against Ms. Brown.

*****

In summary, for Ms. Brown to be an insured under the Policy, her permission to use the Porsche must have flowed from Mr. Cheek to Ms. Cheek, then from Ms. Cheek to Mr. Elsass, and then from Mr. Elsass to Ms. Brown, who was a stranger to both of the Cheeks. We considered a similar situation in *Curtis v. State Farm Mutual Insurance Co.*, 591 F.2d 572 (10th Cir. 1979), a case in which the named insureds had given unrestricted permission to use a family car to two of their daughters (first permittees), who impliedly gave permission to use the car to a third daughter (second permittee) on the night in question, and then the second permittee daughter allowed another person, a boy named Wallace (third permittee), to drive the vehicle while she and a friend were passengers. *Id.* at 574. The first permittee daughters did not know that Wallace was going to be in the car with their second permittee sister on the night of the accident. We stated that under these circumstances "[w]e are convinced that implied permission cannot be stretched so far as to include the driving of Wallace on the night of the accident." *Id.* at 576. The same is true of Ms. Brown's operation of the Porsche in this case.

14

## III. CONCLUSION

For the reasons stated above, we affirm the district court's grant of summary judgment to State Farm and its entry of judgment in favor of State Farm and against Ms. Kowalik and the administrator of Ms. Brown's estate. We also deny Ms. Kowalik's motion requesting that we certify to the Oklahoma Supreme Court a question of state law relating to her theory that Ms. Brown was driving the Porsche as Mr. Elsass's agent and that he remained the vehicle's user because the answer to her question is not potentially determinative of an issue pending in this litigation. *See Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) (identifying factors that may justify certification).

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge